PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice

*Attorneys for Plaintiffs*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>IIG Global Trade Finance Fund Ltd. (in Official Liquidation), *et al.*,<br><br>Debtors. | Case No. 20-10132 (MEW)<br><br>Chapter 15<br><br>Jointly Administered |
| IIG Global Trade Finance Fund Limited (in Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation),<br><br>Plaintiffs,<br><br>v.<br><br>Chaffetz Lindsey LLP, IIG TOV B.V., Trade Finance Trust, IIG Bank (Malta) Ltd., Trilinc Global Impact Fund – Trade Finance, Ltd.<br><br>Defendants. | Adv. Pro. No. __-_____ (MEW)<br><br>Complaint |

## **COMPLAINT**

Plaintiffs IIG Global Trade Finance Fund Ltd. (In Official Liquidation) ("**GTFF**") and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation) ("**STFF**," and together with GTFF, the "**Debtors**" or "**Plaintiffs**") by and through Christopher Kennedy and Alexander Lawson, the duly appointed joint official liquidators (the "**Liquidators**") and recognized foreign

representatives of the Debtors, as and for their complaint for turnover against defendants Chaffetz Lindsey LLP ("**Chaffetz Lindsey**"), IIG TOF B.V. ("**TOF BV**") and Trade Finance Trust ("**TFT**"), and nominal defendants IIG Bank (Malta) Ltd. ("**Malta Bank**") and Trilinc Global Impact Fund – Trade Finance, Ltd. ("**TriLinc**") and allege as follows:

## NATURE OF THE ACTION

1. This action relates to the Debtors' efforts to obtain the proceeds from a settlement following arbitration. Plaintiffs and nominal defendants Malta Bank and TriLinc each invested in certain trade finance loans that were the subject of the arbitration. The borrowers of those loans settled their obligations via the payment of the Settlement Funds (as defined below), which funds are currently held in a Chaffetz Lindsey client trust account (the "**Trust Account**"). Chaffetz Lindsey has refused to disburse the funds without receiving direction from their clients, TOF BV and TFT, who have thus far not provided any such authorization. And, Chaffetz Lindsey asserts a right to recover approximately $53,000 in unpaid legal fees and expenses from the Settlement Funds but has not provided the Liquidators with any invoices to support its claim.

2. By this action, the Liquidators seek a judgment: (a) directing Chaffetz Lindsey to turn over the settlement funds it holds in the Trust Account, subject to the Liquidators agreement to distribute to Malta Bank and TriLinc the amounts agreed to amongst the parties, as set forth herein; (b) entrusting Plaintiffs' share of the Trust Account funds to the Liquidators for disbursement in Plaintiffs' respective foreign proceedings consistent with Cayman Islands law; and (c) directing Chaffetz Lindsey to provide an accounting, including invoices, of its claim for unpaid legal fees and expenses.

**I.    THE PARTIES**

3. Plaintiffs are exempted limited liability companies incorporated under the laws of the Cayman Islands that are in official liquidation before the Grand Court of the Cayman Islands

(the "**Grand Court**"). The Liquidators were appointed by the Grand Court to oversee the Debtors' liquidation proceedings and are the duly recognized foreign representatives in the Debtor's Chapter 15 cases pending before this Court.

4. Defendant Chaffetz Lindsey LLP is a limited liability partnership formed under the laws of New York with its head office located at 1700 Broadway, 33rd Floor, New York, New York 10019.

5. Defendant TFT is a Delaware Statutory Trust having its registered office at Deutsche Bank Trust Company Delaware, 1101 Centre Road, Suite 200, Wilmington, Delaware.

6. Defendant TOF BV is a Dutch company with its corporate seat in Amsterdam, the Netherlands. On or about January 21, 2020, TOF BV was adjudicated bankrupt by the District Court of Amsterdam and the presiding judge, Justice Anna Elizabeth de Vos (the "**Supervising Judge**"), appointed Mr. J.E.P.A van Hooff, as bankruptcy trustee (the "**TOF BV Trustee**").

7. Upon information and belief, nominal Defendant Malta Bank is a company organized under the laws of the Republic of Malta.

8. Upon information and belief, nominal Defendant TriLinc is a company organized in the Cayman Islands.

## II.    JURISDICTION AND VENUE

9. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §1410(a)(1).

10. Plaintiffs and the nominal defendants each acquired their respective participation interests in the underlying loans pursuant to certain master participation agreements each investor entered into with TFT (Plaintiffs) or TOF BV (Malta Bank and TriLinc). Each of those

agreements is governed by New York law. The Trust Account is maintained by a bank located in New York.

11. This is a core proceeding under 28 U.S.C. 157(b)(2) and the Court may enter a final order or judgment in this matter.

12. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiffs consent to the entry of final orders or judgment in this matter by this Court.

### III. FACTUAL BACKGROUND

#### A. The Vicentin Group Agreements

13. IIG Capital, LLC ("**IIG Capital**"), as agent for IIG Trade Opportunities Fund, N.V. ("**TOF NV**") entered into a line of credit agreement with Nacadie Commercial S.A. ("**Nacadie**") dated as of September 1, 2009, which provided Nacadie a line of credit for up to $20 million (the "**Nacadie Line of Credit**"). The Nacadie Line of Credit was amended twice by the parties.

14. IIG Capital, as agent for TOF NV, entered into a line of credit agreement with Frigorífico Regional Industrias Alimenticias Reconquista S.A. ("**FRIAR**") and Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay ("**FRIAR Uruguay**") dated as of September 1, 2009, which provided Friar and Friar Uruguay with a line of credit for up to $35 million (the "**FRIAR Line of Credit**"). The Friar Line of Credit was amended by the parties seven times.

15. IIG Capital, as agent for TOF BV, entered into a line of credit agreement with Algodonera Avellaneda S.A. ("**Algodonera**"), as borrower, and Vicentin S.A.I.C. ("**Vicentin**") and Vicentin S.A.I.C. Sucursal Uruguay ("**Vicentin Uruguay**")[1], as guarantors, dated July 26,

---

[1] Vicentin, Vicentin Uruguay, Algondonera, Nacadie, FRIAR and FRIAR Uruguay shall collectively be referred to as the "**Vicentin Group**".

2010, which provided Algondonera a line of credit for up to $30 million (the "**Algodonera Line of Credit**")[2]. The Algodonera Line of Credit was amended by the parties four times.

16. On December 29, 2011, IIG Capital, as agent for TOF NV, and Nacadie entered into an irrevocable option agreement (the "**Nacadie Option Agreement**") pursuant to which Nacadie had the right to put, or sell, to IIG Capital, as agent for TOF NV, 49% of the shares of FRIAR, and IIG Capital, as agent for TOF NV, would be required to acquire such shares, subject to certain conditions. The Nacadie Option Agreement was amended to change the share percentage to 44.96% of FRIAR's shares.

17. On April 16, 2014, TOF NV assigned to TOF BV any and all residual rights it had under the Nacadie Line of Credit and FRIAR Line of Credit after giving effect to TOF NV's sale of loans originated and outstanding as of November 13, 2013, to TFFI LTD, as described in more detail below.

18. On April 16, 2014, FRIAR, FRIAR Uruguay, Nacadie, and Algodonera entered into a Payment by Subrogation Agreement with TOF BV (the "**Payment by Subrogation Agreement**"), through which Algodonera assumed the obligation to pay the interest payments owed by FRIAR, FRIAR Uruguay, and Nacadie to TOF BV under the FRIAR Credit Line and the Nacadie Credit Line. Pursuant to the terms of the Payment by Subrogation Agreement, the payments made by Algodonera would be treated as a deemed loan to FRIAR, FRIAR Uruguay, and Nacadie that Algodonera could later use to offset the debt it owed to TOF BV under the Algodonera Line of Credit.

---

[2] All loans made pursuant to the Nacadie Line of Credit, the FRIAR Line of Credit and the Algondonera Line of Credit shall collectively be referred to as the "**Vicentin Group Loans**".

5

B. **Beneficial Ownership of the Vicentin Group Loans**

19. TOF BV, as originator, IIG Capital, [as agent for originator], and Malta Bank, as participant, entered into that certain Master Participation Agreement, dated as of September 13, 2012 (as amended from time to time the "**Malta Bank MPA**"). The Malta Bank MPA is governed by New York law.

20. TOF BV, as originator, IIG Capital, as agent for originator and as servicer, International Investment Group, L.L.C. ("**IIG**"), as participant sub-advisor, and TriLinc, as participant, entered into that certain Master Participation Agreement, dated as of June 4, 2013 (the "**TriLinc MPA**"). The TriLinc MPA is governed by New York law.

21. Pursuant to that certain Purchase and Sale Agreement, dated as of November 13, 2013, by and among TOF BV and Trade Finance Funding I B.V. ("**TFFI BV**") TOF BV sold to TFFI BV (at par value) all of TOF BV's right, title and interest in, to and under, *inter alia*, the Algodonera Line of Credit, free and clear of any third-party participation interests.

22. Pursuant to that certain Participation Agreement, dated as of November 13, 2013, by and among TFFI BV and Trade Finance Funding 1, Ltd ("**TFFI LTD**"), TFFI BV (a) sold to TFFI LTD (at par value) a 100% undivided participation interest in, *inter alia*, the Algodonera Line of Credit, free and clear of any third-party participation interests, and (b) appointed TFFI LTD as its true and lawful attorney-in-fact (with full power of substitution) to make all necessary transfers of the TOF BV-originated loans in connection with any purchase or sale thereof and to exercise all lender rights and powers with respect to those loans (the "**POA Asset**").

23. Pursuant to that certain Purchase and Sale Agreement, dated as of November 13, 2013, by and among TOF NV and TFFI LTD, TOF NV sold to TFFI LTD (at par value) all of

6

TOF NV's right, title and interest in, to and under, *inter alia*, the Nacadie Line of Credit and the FRIAR Line of Credit, free and clear of any third-party participation interests.

24. In or about June and July of 2016, TriLinc acquired participation interests in loans to the Vicentin Group pursuant to the TriLinc MPA in an aggregate amount of $15,000,000,[3] which principal remains unpaid as of the date hereof.

25. In or about December 2016, Malta Bank began acquiring participation interests pursuant to the Malta Bank MPA in loans made under the Algondonera Line of Credit, which in aggregate totaled $4,300,0000 in loans, which principal remains unpaid as of the date hereof.

26. TFT and GTFF entered into that certain Master Participation Agreement, dated as of May 31, 2017 (as amended from time to time, the "**GTFF MPA**"), pursuant to which, among other things, TFT sold participation interests to GTFF from time to time in certain loans (at par value), including the Vicentin Group Loans, in each case, free and clear of any third-party participation interests. The GTFF MPA is governed by New York law.

27. TFT and STFF entered into that certain Master Participation Agreement, dated as of June 30, 2017 (as amended from time to time, the "**STFF MPA**"), pursuant to which, among other things, TFT sold participation interests to STFF from time to time in certain loans (at par value), including the Vicentin Group Loans, in each case, free and clear of any third-party participation interests. The STFF MPA is governed by New York law.

28. Pursuant to that certain Purchase and Sale Agreement, dated as of June 6, 2017, by and among TFFI LTD and TFT, TFFI LTD assigned to TFT (at par value) all of TFFI LTD's right, title and interest in and to the POA Asset and, *inter alia*, the Vicentin Group Loans in the following amounts:

---

[3] TriLinc acquired participation interests for $9 million under the FRIAR Line of Credit and $6 million under the Algodonera Line of Credit.

| Borrower | Principal | Interest | Total Outstanding |
|---|---|---|---|
| Algodonera | $2,500,000 | $36,331 | $2,536,331 |
| FRIAR | $14,922,701 | $300,496 | $15,223,197 |
| Nacadie | $16,303,497 | $598,139 | $16,901,636 |
| Vicentin S.A.I.C (FRIAR) | $2,650,000 | $18,898 | $2,668,898 |

29. On July 3, 2013, TFT was assigned the following loan by TFFI LTD:

| Borrower | Principal | Interest | Total Outstanding |
|---|---|---|---|
| Algodonera | $6,400,000 | $85,941 | $6,485,941 |

30. On August 1, 2017, TFT was assigned the following loan by TFFI LTD:

| Borrower | Principal | Interest | Total Outstanding |
|---|---|---|---|
| Algodonera | $9,100,000 | $0 | $9,100,000 |

31. On August 2, 2017, the Debtors paid $3,711,500 to TFT for additional participation interests in Vicentin Group Loans, as follows: (a) Algodonera ($179,000); (b) FRIAR ($2,465,000) and (c) Nacadie ($1,067,500).

32. As a result of these acquisitions, the Debtors, TriLinc and Malta Bank held beneficial interests in Vicentin Group Loans in the following amounts:

| Participant | Total Exposure ($) | Alogdonera Loan Exposure ($) | FRIAR Loan Exposure ($) | Nacadie Loan Exposure ($) |
|---|---|---|---|---|
| GTFF | $27,266,581 | $7,000,000 | $10,145,432 | $10,121,149 |
| STFF | $25,671,117 | $11,179,000 | $7,242,268 | $7,249,848 |
| Malta Bank | $4,300,000 | $4,300,000 | $0 | $0 |
| TriLinc | $15,000,000 | $6,000,000 | $9,000,000 | $0 |
| **Total** | **$72,237,698** | **$28,479,000** | **$26,387,701** | **$17,370,997** |

8

C. **Dispute Between IIG/TOF BV and the Vicentin Group**

33. TOF BV and the Vicentin Group disputed each of the parties' respective rights under the Nacadie Line of Credit, the FRIAR Line of Credit, the Algondonera Line of Credit, the Nacadie Option and the Payment by Subrogation Agreement (collectively, the "**Vicentin Group Agreements**").

34. Based on the aforementioned disagreements, the parties to the Vicentin Group Agreements commenced the following actions to pursue legal remedies to protect their contractual rights:

   a. In June and July 2017, the Vicentin Group requested the First Instance Civil and Commercial Courts of Reconquista, Santa Fe to issue a temporary restraining order to prevent TOF BV from executing the promissory notes executed in connection with the Friar Line of Credit and the Algondonera Line of Credit.

   b. On June 26, 2017, IIG TOF filed with the National Court of First Instance in the Autonomous City of Buenos Aires, Argentina (the "**National Court**"), against FRIAR and FRIAR Uruguay the execution of certain promissory notes issued in guarantee of the FRIAR Credit Line.

   c. On June 26, 2017, IIG TOF filed with the National Court against Vicentin, Vicentin Uruguay, and Algodonera the execution of certain promissory notes issued in guarantee of the Algodonera Credit Line.

   d. On August 2, 2017, Nacadie, FRIAR, FRIAR Uruguay, Algodonera, Vicentin, and Vicentin Uruguay filed an arbitration proceeding before the International Chamber of Commerce based in Buenos Aires, Argentina, against TOF BV, pursuant to the arbitration clause contained in the Nacadie Option (the "**Buenos Aires Arbitration**").

   e. On October 17, 2017, TOF BV filed with the International Chamber of Commerce an arbitration proceeding based in Washington, DC, United States, against Nacadie, FRIAR, and FRIAR Uruguay under the arbitration clauses contained in the Line of Credit Nacadie and in the FRIAR Line of Credit (hereinafter, the "**Washington Arbitration**" and together with the Buenos Aires Arbitration, the "**Arbitrations**").

   f. On November 3, 2017, Algodonera, Vicentin Uruguay, Vicentin, FRIAR Uruguay, FRIAR, initiated a miscellaneous proceeding in the United States District Court for the Southern District of New York For an Order

9

     Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, File No. 1: 17-mc-00437-PGG), in order to obtain documents held by the Deutsche Bank Trust Company Americas.

  g. The District Court granted the application by order dated November 10, 2017.

  h. TOF BV requested that TFT and TOF NV be included as part of the Washington Arbitration, a request that was rejected by the arbitration tribunal in that case.

  i. In August of 2017, FRIAR, Algodonera, Vicentin, and Nacadie, filed a criminal complaint with the Public Prosecutor's Office, Regional Tax Unit No. 4, Reconquista, Santa Fe (Argentina) (the "**Criminal Complaint**").

  j. On April 16, 2018, TOF BV filed a criminal complaint with the National Criminal and Correctional Court, for the purposes of ordering the First Instance Judge of Reconquista to refrain from continuing to process the Criminal Complaint.

35. On or about April 1, 2019, TOF BV, TFT, and the Vicentin Group entered into a settlement agreement (the "**Settlement Agreement**") providing for, among other things, the settlement of all disputes arising out of the Vicentin Group Loans, including the Arbitrations and all other civil and criminal legal proceedings, for total consideration of $31,300,000, including the payment by the Vicentin Group of $28,825,000 (the "**Settlement Funds**") into the Trust Account no. xxxxxx1880 of Chaffetz Lindsey maintained by Citibank, to satisfy the outstanding amounts owed under the Vicentin Group Loans, consisting of (a) $8,573,551 in satisfaction of amounts owed under the Nacadie Loan, (b) $12,120,128 in satisfaction of amounts owed under the FRIAR Loan, and (c) $8,131,321 in consideration for the sale of the obligations owed under the Algodonera Line of Credit to a third party.

36. Upon payment of the Settlement Funds, Chaffetz Lindsey transferred nearly $6,000,000 to various parties, presumably for services rendered in connection with the Settlement Agreement and related legal proceedings. Chaffetz Lindsey was initially paid $949,645.58 from the settlement proceeds in May 2019, $14,275 in July 2019 and an additional

$18,551.73 in October 2019. Upon information and belief, the current balance of the Settlement Funds in the Trust Account totals $22,953,025.74.

37. Chaffetz Lindsey has no interest in the Settlement Funds other than a purported, but undocumented, claim for unpaid fees and expenses of approximately $53,000.

### IV. THE BANKRUPTCY PROCEEDINGS

38. On October 23, 2019, the Grand Court entered a winding up order providing for the liquidation of GTFF and on January 17, 2020, the Liquidators caused GTFF to file a petition in this Court for recognition of GTFF's Cayman Islands proceeding under Chapter 15 of the Bankruptcy Code. On February 19, 2020, this Court entered an order recognizing STFF's Cayman Islands proceeding as a foreign-main proceeding.

39. On January 31, 2020, the Grand Court entered a winding up order providing for the liquidation of STFF and on May 8, 2020, the Liquidators caused STFF to file a petition in this Court for recognition of STFF's Cayman Islands proceeding under Chapter 15 of the Bankruptcy Code. On June 19, 2020, this Court entered an order recognizing STFF's Cayman Islands proceeding as a foreign-main proceeding.

40. On July 31, 2020, Plaintiff filed a Motion for Entry of an Order (A) Authorizing the Liquidators to Enter Into Assignment Agreement and Terminate the Master Participation Agreements; and (B) Entrusting the Debtors' Funds Held in Bank Leumi Collection Accounts to the Liquidators for Distribution in Foreign Main Proceedings (the "**Assignment Motion**"). Plaintiff served Defendants with notice of the Assignment Motion and of the initial hearing date, the adjourned hearing date and all subsequent hearing dates related to the Assignment Motion. Defendants did not file any opposition to the Assignment Motion and did not attend the hearing.

41.     On October 8, 2020, the Court entered an order authorizing Plaintiffs to enter into an assignment agreement pursuant to which TFT would assign to Plaintiff all its right, title and interest in, to and under, *inter alia*, the Vicentin Group Loans and the Vicentin Group Agreements.

42.     As of October 8, 2020, TFT and Plaintiffs are parties to an assignment agreement (the "**Assignment Agreement**") governed by New York law, pursuant to which TFT assigned to Plaintiffs all its right, title and interest in and to the Vicentin Group Loans and the Vicentin Group Agreements. As a result of and pursuant to the Assignment Agreement, Plaintiffs are 'Lenders' under the Vicentin Group Agreements, subject only to the rights of third parties, *i.e.*, TriLinc and Malta Bank.

43.     Notwithstanding the Assignment Agreement, all Settlement Funds were paid in the Trust Account in settlement of claims in connection with the Vicentin Group Loans. The Settlement Funds are therefore being held in trust for the benefit of the participants under the relevant master participation agreements, *i.e.*, Plaintiffs, TriLinc and Malta Bank (collectively, the "**Beneficiaries**") who own 100% of the economic interests in the Vicentin Group Loans. Thus, while TOF BV and TFT were the signatories to the Settlement Agreement and they were Chaffetz Lindsey's clients for purposes of the legal actions and related Arbitrations, the Beneficiaries owned the economic interests of the Vicentin Group Loans at the time the Settlement Agreement was entered into and thus, they are the only parties entitled to a distribution of such funds.

44.     TOF BV and TFT did not retain any residual economic interest in the Vicentin Group Loans and thus have no claim to any of the Settlement Funds.

    **A.    Allocation of the Settlement Funds**

45. The Beneficiaries each interpreted the terms of the Settlement Agreement differently for purposes of allocating the Settlement Funds to specific Vicentin Group Loans and thus, each proposed a different methodology for calculating each party's interest in the Settlement Funds.

46. In order to avoid costly litigation, the Beneficiaries agreed to allocate the Settlement Funds as follows:

    a.    $8,648,149.00 shall be paid to Liquidators on behalf of GTFF;

    b.    $8,142,116.00 shall be paid to the Liquidators of behalf of STFF;

    c.    $1,260,612.07 shall be paid to Malta Bank; and

    d.    $4,902,149.67 shall be paid to TriLinc.

47. The allocation set forth above may be subject to a *pro rata* reduction for the unpaid fees and expenses payable claimed by Chaffetz Lindsey, provided such fees and expenses were incurred in connection with the Settlement Agreement.

**V.    CLAIMS FOR RELIEF**

**COUNT I:**
**TURNOVER AND ACCOUNTING – 11 U.S.C. § 542**

48. Plaintiffs hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

49. Plaintiffs have a property interest in the funds held in the Trust Account totaling $16,640,265, which amount includes (a) $8,648,149.00 attributable to GTFF's agreed upon share of the Settlement Funds based upon the unpaid principal amount of participation interests it held in Vicentin Group Loans and (b) $8,142,116.00 attributable to STFF's agreed upon share of the

Settlement Funds based upon the unpaid principal amount of participation interests it held in Vicentin Group Loans.

50. Those funds can be used by the Liquidators, on behalf of Plaintiffs, to distribute to its stakeholders and are of more than inconsequential value to Plaintiffs.

51. Chaffetz Lindsey refuses to deliver to the Plaintiffs their share of the Settlement Funds without a direction from TOF BV and TFT or a court order.

52. TFT will not provide such direction without a court order.

53. The Plaintiffs' share of the Settlement Funds held in the Trust Account are assets of the Debtors located within the territorial jurisdiction of the United States. Those funds should be entrusted to the Liquidators, as foreign representatives in the Debtors' chapter 15 cases, pursuant to section 1521(b) of the Bankruptcy Code.

54. The interests of the Debtors' creditors and all other parties-in-interest are and will at all times be sufficiently protected.

55. Accordingly, pursuant to section 542 of the Bankruptcy Code, the Debtors are also entitled to an accounting of all costs and expenses of Chaffetz Lindsey incurred after the date of the Settlement Agreement, including all unpaid amounts claimed by Chaffetz Lindsey.

WHEREFORE, Plaintiffs respectfully seek entry of a judgment:

    a. Subject to paragraph (b) herein, ordering Defendant Chaffetz Lindsey to turn over and deliver to Plaintiffs the Settlement Funds totaling $22,953,025.74, of which amount:

        i. $8,648,149.00 shall be paid to Liquidators on behalf of GTFF;

        ii. $8,142,116.00 shall be paid to the Liquidators of behalf of STFF;

        iii. $1,260,612.07 shall be paid to Malta Bank; and

    iv. $4,902,149.67 shall be paid to TriLinc.

 b. Ordering Chaffetz Lindsey to provide to Plaintiffs an accounting of all fees and expenses it incurred after the date of the Settlement Agreement, including the $53,000 in fees and expenses it claims are unpaid. Such accounting shall include the invoices, including time notes in reasonable detail to understand the post-Settlement Agreement work that was be undertaken by Chaffetz Lindsey.

 c. Entrusting the funds awarded to Plaintiffs in connection with this Complaint to the Liquidators for distribution in the Debtors' Cayman Islands' liquidation proceedings in accordance with Cayman Islands law.

 d. Awarding Plaintiff such other and further relief as the Court deems just and proper.

DATED: December 9, 2021  
   New York, NY

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ John A. Pintarelli _____  
 John A. Pintarelli  
 Patrick E. Fitzmaurice  
 31 West 52nd Street  
 New York, NY 10019-6131  
 Phone: 212.858.1000  
 Fax: 212.858.1500  
 john.pintarelli@pillsburylaw.com  
 patrick.fitzmaurice@pillsburylaw.com

*Attorneys for Foreign Representatives*