EXHIBIT 1

(Settlement)

EXECUTION VERSION

**DATED [●] JULY 2023**

between

**IIG GLOBAL TRADE FINANCE FUND LTD.
(IN OFFICIAL LIQUIDATION)**

**IIG STRUCTURED TRADE FINANCE FUND LTD.
(IN OFFICIAL LIQUIDATION)**

**TRILINC GLOBAL IMPACT FUND – TRADE FINANCE LTD.**

**IIG BANK (MALTA) LTD.**

**GIROBANK N.V.**

**GIROBANK INTERNATIONAL N.V.**

**THE VENEZUELA RECOVERY FUND N.V.**

and

**MR. J.E.P.A VAN HOOFF IN HIS CAPACITY AS BANKRUPTCY TRUSTEE
IN THE BANKRUPTCY OF IIG TOF B.V.**

---

**SETTLEMENT AGREEMENT
REGARDING COLLECTION OF
LOANS**

---

**THIS SETTLEMENT AGREEMENT** is made on [●] July 2023 (“**Settlement Agreement**”)

**AMONG**:

(1)    **IIG Global Trade Finance Fund Ltd. (in Official Liquidation) (“GTFF”)**, an exempted limited company incorporated under the laws of the Cayman Islands that is in official liquidation before the Grand Court of the Cayman Islands (the “**Grand Court**”);

(2)    **IIG Structured Trade Finance Fund Ltd. (in Official Liquidation)**, an exempted limited company incorporated under the laws of the Cayman Islands that is in official liquidation before the Grand Court (“**STFF**”);

(3)    **TriLinc Global Impact Fund – Trade Finance Ltd.**, a Cayman Islands exempted company (“**TriLinc**”);

(4)    **IIG Bank (Malta) Ltd.**, a company incorporated under the laws of Malta, with its corporate seat in Malta at Level 20, Protomaso Business Tower, St. Julians STJ 4011, Malta, and registered with the Malta Business Registry in Malta under number C48767 (“**Malta Bank**”);

(5)    **Girobank N.V.** and **Girobank International N.V.**, companies existing under the laws of Curaçao, with their corporate seat in Curaçao at Gosieweg 9 and Scharlooweg 35 respectively, Willemstad, Curaçao and registered with the Chamber of Commerce and Industry in Curaçao under numbers 72797 and 53674 respectively (“**Girobank**”);

(6)    **The Venezuela Recovery Fund N.V.**, a limited liability company incorporated under the laws of Curaçao, with its corporate seat in Curaçao, at Abraham de Veerstraat 9, and registered with the Chamber of Commerce and Industry in Curaçao under number 67937 (“**VRF**”);

collectively the “**Participants**”,

and

(7)    **Mr J.E.P.A. van Hooff in his capacity as bankruptcy trustee in the bankruptcy of IIG TOF B.V.**, a company incorporated under the laws of the Netherlands with its corporate seat in Amsterdam and its registered office in Curaçao at Blenchiweg 23, and registered with the Chamber of Commerce in the Netherlands under number 34126083 (the “**Bankruptcy Trustee**” and “**IIG TOF**” respectively).

The parties to this Settlement Agreement are hereinafter collectively referred to as the “**Parties**” and individually as a “**Party**”.

**RECITALS**:

(1)    IIG TOF is part of the group of companies affiliated with The International Investment Group, L.L.C. (the “**IIG Group**”). Within the IIG Group, IIG TOF provided or facilitated the provision of trade credit facilities to companies in Latin America, including the Algodonera Loan, CAGSA Loan, FRIAR Loan, Nacadie Loan, Rasic Loan, Saldana Loan and SanCor Loan (each as defined in Annex A and collectively the “**Loans**”).

(2)

(2)    IIG TOF, as originator, and TriLinc, Malta Bank and Girobank as participants, entered individually from time to time into certain Master Participation Agreements ("**MPAs**") pursuant to which, among other things, TriLinc, Malta Bank and Girobank purportedly acquired participation interests in one or more of the Loans.

(3)    IIG TOF sold some and/or part of the Loans to Trade Finance Funding I B.V. ("**TFFI B.V.**") by means of a purchase and sale agreement of 13 November 2013. On the same day, TFFI B.V. entered into a participation agreement with Trade Finance Funding I, Ltd ("**TFFI Ltd.**") pursuant to which TFFI B.V. sold certain participation interests and among other things the Loans to TFFI Ltd. and appointed TFFI Ltd. as attorney-in-fact to transfer and/or sell certain assets.

(4)    TFFI Ltd. and Trade Finance Trust ("**TFT**") entered into three purchase and sale agreements dated 6 June 2017, 3 July 2017 and 1 August 2017, respectively, pursuant to which TFT acquired interests in one or more of the Loans.

(5)    TFT and STFF and GTFF entered individually into certain MPAs pursuant to which, among other things, STFF and GTFF purportedly acquired participation interests in one or more of the Loans.

(6)    IIG Trade Opportunities Fund N.V. ("**TOF NV**") and VRF, as a participant, entered into certain MPAs pursuant to which, among other things, VRF purportedly acquired participation interests in one or more of the Loans.

(7)    IIG TOF was declared bankrupt on 21 January 2020 by the District Court in Amsterdam. Mr. J.E.P.A. van Hooff was appointed as Bankruptcy Trustee of IIG TOF. Ms. A.E. de Vos was appointed as supervisory judge (the "**Dutch Supervisory Judge**").

(8)    Parties were in dispute regarding the validity of and/or entitlements pursuant to the Participations Rights (as defined below) regarding the Loans (the "**Participations Uncertainty**"). This dispute is dealt with below in this Settlement Agreement in terms of each Party's pro-rata entitlement.

(9)    Parties are in dispute as to who is authorized to collect one or more of the Loans ("**Collection**") following the securitization of loans originated by IIG TOF and TOF NV. In addition, under Dutch bankruptcy law, it is uncertain what the ranking is of the Participants' claim pursuant to each party's contractual participation rights regarding the proceeds of the Loans should IIG TOF's bankruptcy estate collect one or more of the Loans (the "**Collection Uncertainty**"). This dispute is dealt with below in this Settlement Agreement.

(10)   Parties emphasize that the information included in these Recitals may not be accurate or complete. No rights may be derived from these Recitals.

**IT IS AGREED** as follows:

(3)

1.    **SETTLEMENT**

1.1    **Participations Uncertainty Settlement**
Each Party agrees that the Parties hold beneficial interests, expressed as a percentage of the outstanding principal amount of the Loans, which will entitle such holder to the same percentage of proceeds collected from the borrowers of such Loans as set forth below:

| CAGSA Loan: | Rasic Loan: | SanCor Loan: |
|---|---|---|
| • TriLinc: 37.31%<br><br>• STFF: 34.33%<br><br>• GTFF: 16.42%<br><br>• Malta Bank: 11.94% | • VRF: According to its Rasic Participation.<br><br>• Girobank: According to its Rasic Participations. | • TriLinc: 16.83%<br><br>• STFF: 52.28%<br><br>• VRF: 2.66%<br><br>• Malta Bank: 5.59%<br><br>• GiroBank: 7.40%<br><br>• IIG TOF: 15.24% |

1.2    **Collection Uncertainty Settlement**
Parties agree to the Collection subject to the Collection Terms (as defined below) and payment of any cash proceeds resulting from Collection in accordance with the applicable Waterfall (as set out in section 4).

1.3    **Consideration**
In consideration for entering into this Settlement Agreement:

1.    the Parties agree to Girobank's entitlement regarding its beneficial interest in the SanCor Loan as described in paragraph 1.1 above,

2.    Girobank agrees to the entitlements regarding the beneficial interests in the Loans of TriLinc, GTFF, STFF, VRF, Malta Bank and IIG TOF as described in paragraph 1.1 above,

3.    Girobank waives any entitlements and any and all claims it may have regarding the Loans other than its beneficial interest in (a) the SanCor Loan as set out in paragraph 1.1 above; (b) the Settlement Proceeds as set forth in paragraph 2.1 below; and (c) the Rasic Loan as set forth above. VRF and Girobank shall share in any funds recovered on the Rasic Loan according to their Rasic Participations.  VRF and Girobank believe that they each own participation interests (the "**Rasic Participations**"), collectively totalling 100% of the outstanding principal amount of the Rasic Loan.

4.    The Participants will pay to the Bankruptcy Trustee a total amount of $170,000 in the following pro rata shares within 7 business days of receipt of the Settlement Funds (as defined below) from the Bankruptcy Court (as defined below):

    • TriLinc – $28,333.34,

- GTFF – $28,333.34,

- STFF – $28,333.33,

- VRF – $28,333.33,

- Malta Bank – $28,333.33, and

- Girobank – $28,333.33.

5.   On behalf of the Participants, 5% of any net cash proceeds from the recovery of the CAGSA Loan and the SanCor Loan collectively (up to a maximum of $500,000) (the "**Deferred Consideration**") will be paid out from the relevant Collection Account (as defined below) to the Bankruptcy Trustee in accordance with the Waterfall as set out in paragraph 4.1 below, within 10 business days after receipt of such proceeds.

6.   The Participants agree to subordinate their bankruptcy claims against IIG TOF to the claims of IIG TOF's other ordinary creditors with the exception of Citco Nederland B.V. This means that if the Bankruptcy Trustee is able to make distributions to IIG TOF's ordinary creditors, the Bankruptcy Trustee will only make distributions on the Participants' claims after IIG TOF's other ordinary creditors with the exception of Citco Nederland B.V. have been paid in full. Notwithstanding anything to the contrary stated herein, nothing in this agreement shall prohibit, or limit in any way, a Participant from filing a claim against IIG TOF in its bankruptcy.

## 2.      COLLECTION

### 2.1      Collection Vicentin Group Loans

For the avoidance of doubt, the Bankruptcy Trustee will not collect any proceeds from the Vicentin Group Loans and is not entitled to any of the settlement funds deposited into the disputed fund account, the current total amount of which are $22,868,025.74 (the "**Settlement Funds**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

The Participants agree that the Settlement Funds shall be allocated as follows:

- GTFF/STFF: $14,998,887.92

- TriLinc: $4,530,866.74

- VRF: $1,641,257.32

- Malta Bank: $1,197,013.76

- Girobank: $500,000.00

The Participants agree that the Settlement Funds shall be paid into the Pillsbury Winthrop Shaw Pittman LLP ("**PWSP**") client trust account, as counsel to the Liquidators. Within 7 business days of receipt of the Settlement Proceeds, PWSP shall remit: (a) $170,000 to the Bankruptcy Trustee, which payment shall satisfy the Participants' obligations under paragraph 1.3 under 1, and (b) each Participants respective share of the Settlement Funds after deducting each Participants' pro rata share of the $170,000 remitted to the Bankruptcy Trustee.

(5)

2.2 **Collection Saldana Loan**

STFF and GTFF will collect the Saldana Loan. The Bankruptcy Trustee is not obliged to and will not actively collect the Saldana Loan. STFF and GTFF shall provide regular updates to the Bankruptcy Trustee as to the progress of the Collection efforts with regard to the Saldana Loan.

2.3 **Collection Rasic Loan**

The Bankruptcy Trustee acknowledges and agrees that, while it is not obligated to and will not actively collect the Rasic Loan, each of VRF and Girobank reserves the right to actively collect the Rasic Loan.

(i) If VRF and/or Girobank determine that they will attempt to collect on the Rasic Loan, they will notify the Bankruptcy Trustee and the Bankruptcy Trustee shall work in good faith to enter into an assignment agreement with VRF and/or Girobank to transfer its rights, title and interests in the Rasic Loan as lender of record to facilitate such collection efforts.

(ii) Any assignment agreement shall be in substantially the form of the agreement annexed hereto as <u>Annex C</u>.  Upon any assignment by IIG TOF, VRF and/or Girobank shall provide regular updates to the Bankruptcy Trustee as to the progress of the Collection efforts with regard to the Rasic Loan.

(iii) Any costs and expenses, including reasonable attorney's fees, incurred by the Bankruptcy Trustee in connection with entering into such assignment agreement shall be borne exclusively by VRF and/or Girobank.

(iv) Girobank believes it has participation interests in the Rasic Loan in excess of the amount of obligations attributed to the Rasic Loan on IIG TOF's records as set forth herein or other loans made to Rasic by any IIG entity, and Girobank reserves its right to collect any assets to which it may be entitled with respect to such interests (and, for the avoidance of doubt, VRF reserves its right to contest Girobank's entitlement to such interests), subject to VRF's Rasic Participation.

2.4 **Collection CAGSA and SanCor Loans**

STFF and GTFF will use their best efforts to collect the CAGSA and SanCor Loans subject to the "**Collection Terms**":

(i) STFF and GTFF shall use their best efforts to collect the CAGSA and SanCor Loans;

(ii) STFF and GTFF shall provide regular updates to the relevant Parties designated herein as sharing in the collections on the CAGSA Loan and the SanCor Loan, respectively, (the "**Relevant Parties**"), as to the progress of the Collection efforts regarding the CAGSA Loan and SanCor Loan. Notwithstanding the foregoing, the Bankruptcy Trustee shall be a relevant Party for purposes of updates for the Loans;

(iii) regarding the CAGSA Loan Collection, STFF and GTFF will use their best efforts to (a) negotiate and vote regarding a restructuring plan CAGSA is expected to offer to its creditors, provided that STFF and GTFF will provide

(6)

TriLinc, Malta Bank and the Bankruptcy Trustee with prompt notice of any proposed settlement or other agreement reached with CAGSA, and (b) defend the acknowledged claim pursuant to the CAGSA Loan in CAGSA's bankruptcy in any claims admission litigation brought by CAGSA's bankruptcy trustee or a creditor of CAGSA;

(iv) regarding the SanCor Loan, Collection, STFF will use reasonable endeavours to (i) negotiate with SanCor a settlement regarding the claim under the SanCor Loan, provided that STFF will provide TriLinc, Girobank, VRF, Malta Bank and the Bankruptcy Trustee with prompt notice of any proposed settlement or other agreement reached with SanCor and/or (ii) execute the security rights provided by SanCor regarding the SanCor Loan and/or (iii) to the extent required to collect the SanCor Loan, initiate litigation against SanCor;

(v) provided that IIG Capital LLC ("**IIG Capital**") does not raise objections to the envisaged transfer and Collection within 10 business days after receipt of the Bankruptcy Trustee's notification in accordance with paragraph 5, the Bankruptcy Trustee will enter into a New York law governed assignment agreement in accordance with <u>Annex C</u> hereto to transfer IIG TOF's rights, title and interest as lender of record and with respect to any collateral pledged as security for the Saldana, SanCor Loan and CAGSA Loan to STFF and GTFF, respectively with a view to enable STFF to collect the SanCor Loan and GTFF and STFF to collect the Saldana and CAGSA Loan. STFF and GTFF undertake to exercise any power conferred to them as lender of record with care, fairness and diligence and only exercise the power of lender of record to the extent required to collect the SanCor Loan and CAGSA Loan. STFF and GTFF will indemnify the Bankruptcy Trustee in his capacity and personally, including his office, partners and employees against any and all losses, claims, liabilities, obligations and judgments made or brought by CAGSA, MOLCA (as defined below), SanCor or SanCor Brazil based upon, arising out of, or in connection with transferring IIG TOF's rights, title and interest as lender of record for the SanCor Loan and CAGSA Loan to STFF and GTFF;

(vi) STFF and GTFF will collect any proceeds on the CAGSA Loan in a separate collection account in New York, New York and will collect any proceeds on the SanCor Loans in a separate collection account in New York, New York (the "**Collection Account**");

(vii) STFF and GTFF are authorized to stop Collection regarding the CAGSA Loan in case the expected remaining proceeds of the CAGSA Loan is less than EUR 25,000, or in any situation in which GTFF and STFF reasonably believe Collection of the loans is no longer economically beneficial, upon receiving the consent of TriLinc and Malta Bank, such consent not to be unreasonably withheld. GTFF and STFF are authorised to investigate the possibility of selling the CAGSA Loan prior to any settlement being agreed in the CAGSA restructuring;

(viii) STFF is authorized to stop Collection regarding the SanCor Loan in case the expected remaining proceeds of the SanCor Loan is less than EUR 25,000, or in

(7)

any situation in which STFF reasonably believes Collection of the SanCor Loan is no longer economically beneficial, with the consent of TriLinc, Girobank, VRF, and Malta Bank, which consent shall not be unreasonably withheld; and

(ix) STFF and GTFF are obliged to render a separate accounting of the Collection of each of the SanCor Loan and the CAGSA Loan, including providing underlying invoices, bank statements and correspondence to the Relevant Parties with respect to the SanCor Loan and the CAGSA Loan.

## 3. COSTS

### 3.1 Collection costs

The Collection costs regarding a Collection of a Loan include but are not limited to:

(i) the reasonable costs of external legal advisors, including the time costs of the Joint Official Liquidators of GTFF and STFF or the Bankruptcy Trustee, if applicable, regarding Collection of such Loan,

(ii) litigation costs (such as court fees and cost of proceedings in case of loss) and reasonable fees and expenses incurred by litigation counsel regarding Collection of such Loan, (collectively, the "**Collection Costs**").

The Party who actively collects a Loan will keep separate time entries of the Collection Costs incurred regarding such Loan and shall share those entries, redacted for privilege, with the Relevant Parties as to the SanCor Loan and the CAGSA Loan, respectively.

## 4. WATERFALL

### 4.1 CAGSA Loan and SanCor Loan

Cash proceeds resulting from Collection of the CAGSA Loan and SanCor Loan will be used to pay, in the following order:

(i) reimbursement of the costs incurred by GTFF and/or STFF in the recovery of the CAGSA Loan and the SanCor Loan,

(ii) reservation of an amount, as determined by GTFF and STFF, for expected Collection Costs regarding Collection of the CAGSA Loan and the SanCor Loan, which reserves shall be separately maintained. To the extent that any reserved amount remains with respect to the CAGSA Loan or the SanCor Loan after it is determined to discontinue Collections for such Loans, if applicable, any such remaining reserved amount shall be disbursed according to this Waterfall for each Loan, as applicable.

(iii) payment to IIG TOF of the Deferred Consideration as noted above at paragraph 1.3 under 5, being 5% of the total recoveries from either (or a combination of) the CAGSA Loan and the Sancor Loan, up to a total cap of $500,000, in a bank account designated by the Bankruptcy Trustee,

(iv)    each Participant and IIG TOF shall be paid their pro rata share of the Collection on the CAGSA Loan, and, subject to paragraph 4.1 under (v) below, the Sancor Loan,

(v)    Upon receipt by IIG TOF of $1,000,000 from Sancor Loan Collection in accordance with paragraph 4.1 under (iv) above, all future distributions IIG TOF would otherwise be entitled to from the Sancor Loan Collection will be used to repay:

(1) the $170,000 paid by the Participants to IIG TOF under paragraph 1.3 under 4 above, and

(2) the Deferred Consideration under paragraph 1.3 under 5 above,

to each Participant, pro rata, as calculated by the principal amount each Participant holds without regard the IIG TOF's interests in the Sancor Loan. Upon repayments of the amounts stated in this paragraph to the Participants, IIG TOF shall be entitled to receive its pro rata share of all future Sancor Loan Collection.

All Collection on the CAGSA Loan and Sancor Loan shall be held in a PWSP client trust account (maintained at a bank branch in New York) pending distribution (the "**Collection Account**"). Cash proceeds resulting from Collection shall be paid by GTFF and STFF to the Collection Account within 10 business days after receipt. GTFF and STFF shall procure that payments shall be promptly made in accordance with the Waterfall as set out in this paragraph 4.1.

The Collection costs for the CAGSA Loan and the SanCor Loan shall only be payable by Participants that have a beneficial interest in such loans and to the extent of the percentages set forth in paragraph 1.1.

For avoidance of doubt, to the extent the Deferred Consideration is repaid pursuant to paragraph 4.1(v)(2), such repayment shall be made to the Participants in accordance with their pro rata share of the (a) CAGSA Loan to the extent the Deferred Consideration was paid from Collections on account of the CAGSA Loan and (b) SanCor Loan to the extent the Deferred Consideration was paid from Collections on account of the SanCor Loan.

4.2    **Rasic Loan**
Cash proceeds resulting from active Collection of the Rasic Loan will be used to pay, in the following order:

(i)    unpaid Costs regarding the Rasic Loan,

(ii)    reservation of an amount, as determined by VRF and Girobank, for expected Costs regarding the Rasic Loan. To the extent that any reserved amount remains with respect to the Rasic Loan after it is determined to discontinue Collections for such Loan, if applicable, any such remaining reserved amount shall be disbursed according to this Waterfall for the Rasic Loan, as applicable; and

(iii)    payment of the Parties' pro rata share regarding Rasic Loan in accordance with the Rasic Participations.

(9)

Cash proceeds resulting from Collection will be paid by VRF and Girobank to a separate collection account within 10 business days after receipt. VRF and Girobank will endeavour that payments will be promptly made in accordance with the Waterfall as set out in this paragraph 4.2.

5.    **NOTIFICATION MPA AGENT**

The Bankruptcy Trustee shall notify IIG Capital, agent under certain MPAs, that the Bankruptcy Trustee will transfer IIG TOF's lender of record rights regarding the Saldana, CAGSA and SanCor Loans to STFF and GTFF and that STFF and GTFF will collect the Saldana, CAGSA and SanCor Loans. The Bankruptcy Trustee shall notify IIG Capital, as agent under certain MPAs, that the Bankruptcy Trustee will transfer IIG TOF's lender of record rights regarding the Rasic Loan to VRF and Girobank. The Bankruptcy Trustee will request IIG Capital to raise any objections it may have against such transfer and Collection within 10 business days after receipt of such notification.

6.    **INDEMNIFICATION**

6.1    The Bankruptcy Trustee, STFF, GTFF, TriLinc, VRF, Malta Bank and Girobank ("**Indemnifying Party**") will indemnify the relevant  collecting party including the partners, employees and office of such collecting party against any and all losses, claims, liabilities, obligations and judgments made or brought by any person that is not a party to this Settlement Agreement based upon, arising out of, or in connection with any payments received from the Collection ("**Third Party Claims**").

6.2    This indemnification does not apply to the extent that with respect to a Loan the Indemnifying Party is the collecting party.

6.3    The liability of an Indemnifying Party under this indemnification shall be capped at the actual amount of proceeds such party is paid from the Collection of the specific Loan at issue.

6.4    An Indemnifying Party under this indemnification shall not be liable for any Third Party Claims made or brought more than 9 months after the final disbursement has been made to an Indemnifying Party pursuant to the Collection.

7.    **APPROVAL**

7.1    This Settlement Agreement is explicitly subject to approval of the Dutch Supervisory Judge.

7.2    This Settlement Agreement is explicitly subject to approval by the Bankruptcy Court.

8.    **MISCELLANEOUS**

8.1    All notices, consents, waivers and other communications in connection with this Settlement Agreement will be in writing in English and delivered by hand or sent by registered mail, express courier or email to the appropriate addresses set out below, or to such other addresses as notified by a Party to the other Party from time to time. A notice will be

(10)

effective on receipt and is deemed to have been received (i) at the time of delivery, if delivered by hand, registered mail or express courier, or (ii) at the time of successful transmission, if delivered by email.

| To GTFF and STFF: | To TriLinc: | To Malta Bank: |
|---|---|---|
| *Attn*: Mr. Chris Kennedy<br>*Address*:<br>Flagship Building<br>PO Box 2507<br>2nd Floor, 142 Seafarers Way, George Town, Grand Cayman, KY1-1104 Cayman Islands<br>*Email*:<br>chris.kennedy@alvarezandmarsal.com<br><br>*with a copy to:*<br><br>Pillsbury Winthrop Shaw Pittman LLP<br>31 W52nd Street<br>New York, NY 10019<br>*Attn*: Mr. John A. Pintarelli<br>*Email:*<br>john.pintarelli@pillsburylaw.com | *Attn*: Mark Tipton<br>*Address*:<br>1230 Rosecrans Ave.<br>Suite 605<br>Manhattan Beach, CA 90266<br>*Email*:<br>mtipton@trilincglobal.com<br><br>*with a copy to:*<br><br>*Attn*: Andrew Kissner<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019<br>*Email*: akissner@mofo.com | *Attn*: Raymond Busuttil<br>*Address*:<br>Level 20, Portomaso<br>Business Tower St. Julians, STJ 4011, Malta<br>*Email*:<br>Raymond.busuttil@iigbank-malta.com<br><br>*with a copy to*:<br><br>*Attn:* Carl F. Regelmann<br>Tannenbaum Helpern Syracuse & Hirschtritt LLP<br>900 Third Avenue<br>New York, NY 10022<br>*Email:*<br>regelmann@thsh.com |
| **To Girobank:** | **To VRF:** | **To the Bankruptcy Trustee of IIG TOF:** |
| *Attn*: Mayesi Hammoud<br><br>*Address*:<br>Mercuriusstraat 24 Willemstad, Curaçao, Dutch Caribbean<br>*Email*: hammoud@ox-wolf.com<br><br>with a copy to:<br><br>Constance M. Boland<br>Thompson Hine LLP<br>300 Madison Ave., 27th Floor<br>New York, NY 10017-6232<br>Email:<br>Constance.Boland@ThompsonHine.com | The Venezuela Recovery Fund N.V.<br>Attn: Mr. Lisandro Ponte da Costa<br><br>*Address*:<br>Abraham de Veerstraat 9<br>Willemstad, Curaçao<br>Email: vrfmgmt.cur@gmail.com<br><br>with a copy to:<br><br>VPM LAW<br>Attn: Mrs. Valerie P. Maria LLM<br>Email: valerie@vpm-law.com<br><br>*and*<br><br>Reed Smith LLP<br>Attn: Mr. Aaron Javian<br>Email: ajavian@reedsmith.com | *Attn*: J.E.P.A. van Hooff<br><br>*Address*:<br>Beethovenplein 10<br>(1077 WM) Amsterdam, The Netherlands<br>*Email*:<br>job.vanhooff@stibbe.com<br>iigtof@stibbe.com |

(11)

8.2     Each individual signing this Settlement Agreement on behalf of a party hereto hereby represents and warrants that he or she is, on the date he or she signs this Agreement, duly authorized by all necessary and appropriate action to sign this Settlement Agreement on behalf of such party and does so with full legal authority.

8.3     Each Party shall pay its own costs and expenses in connection with the preparation and execution of this Settlement Agreement and any ancillary agreement, except as otherwise explicitly provided in this Settlement Agreement or as otherwise specifically agreed in writing after the date of this Settlement Agreement.

8.4     This Settlement Agreement constitutes the entire agreement between the Parties relating to the subject matter of this Settlement Agreement. This Settlement Agreement supersedes any preceding or concurrent oral or written agreements between the Parties with respect to such subject matter.

8.5     This Settlement Agreement may be amended only by written agreement among all Parties that are affected by such amendment.

8.6     The invalidity or unenforceability of any provision of this Settlement Agreement will not affect the validity or enforceability of any other provision of this Settlement Agreement. Any such invalid or unenforceable provision will be replaced or be deemed to be replaced with a provision that is valid and enforceable and most closely resembles the intent of the invalid or unenforceable provision.

8.7     To the fullest extent permitted by applicable law, each Party waives its right to nullify (*vernietigen*), dissolve (*ontbinden*) or partially dissolve (*gedeeltelijk ontbinden*) this Settlement Agreement on the basis of Article 6:228, Article 6:265 or Article 6:270 of the DCC or to request a competent court to amend this Settlement Agreement on the basis of Article 6:230(2) of the DCC.

8.8     Any sums payable by a Party under this Settlement Agreement are exclusive of value added tax levied on the basis of the Value Added Tax Act 1968 (*Wet op de Omzetbelasting 1968*) or similar foreign legislation ("**VAT**"). If VAT is due under this Settlement Agreement or any of the deliveries or services contemplated by this Settlement Agreement, Dutch VAT will be added to the sums payable on receipt of an appropriate invoice to that effect.

8.9     If a Party fails to pay any sum due under this Settlement Agreement, that Party shall be liable for any accrued interest on such sum from the date payment is due until the date payment is made, at the statutory interest rate within the meaning of Article 6:119a of the DCC, except as otherwise explicitly provided in this Settlement Agreement.

8.10    This Settlement Agreement may be executed in any number of counterparts.

**9.     JURISDICTION AND APPLICABLE LAW**

9.1     **Jurisdiction**
All disputes arising out of or in connection with this Settlement Agreement or any resulting agreements (unless the relevant agreement explicitly provides otherwise) will be resolved by the Amsterdam District Court following proceedings in English before the Chamber for International Commercial Matters ("**NCC**") to the exclusion of the jurisdiction of any other

(12)

courts. An action for interim measures, including protective measures, available under Dutch law may be brought before the NCC in Summary Proceedings ("**CSP**") conducted in the English language. Any appeals against NCC or CSP judgments will be submitted to the Amsterdam Court of Appeal's Chamber for International Commercial Matters. The NCC Rules of Procedure apply.

9.2    **Applicable law**

This Settlement Agreement and any non-contractual obligations arising out or in connection with this Settlement Agreement are governed by the laws of the Netherlands, unless the relevant agreement explicitly provides otherwise.

*(Remainder of Page Intentionally Left Blank)*

(13)

**THUS AGREED AND SIGNED ON __ JULY 2023:**

**IIG Global Trade Finance Fund Ltd. (in Official Liquidation)**

**IIG Structured Trade Finance Fund Ltd. (in Official Liquidation)**

By: Christopher Kennedy, solely in his capacity as joint official liquidator of IIG Global Trade Finance Fund Ltd. (In Official Liquidation) and not in his personal capacity

By: Christopher Kennedy, solely in his capacity as joint official liquidator of IIG Structured Trade Finance Fund Ltd. (In Official Liquidation) and not in his personal capacity

**TriLinc Global Impact Fund – Trade Finance Ltd.**

**IIG Bank (Malta) Ltd.**

By: Mark Tipton
Title:

By: Raymond Busuttil
Title:

**Girobank N.V**

**Girobank International N.V.**

By: Mayesi Hammoud
Title:

By: Mayesi Hammoud
Title:

**The Venezuela Recovery Fund N.V**

**Mr J.E.P.A. van Hooff, in his capacity as bankruptcy trustee in the bankruptcy of IIG TOF B.V.**

By: Lisandro Ponte da Costa
Title:

By: Mr J.E.P.A. van Hooff

(14)

**ANNEX A**

| | |
|---|---|
| Algodonera Loan | IIG TOF entered into a line of credit agreement with Algodonera Avellaneda S.A. ("**Algodonera**"), as borrower, and Vicentin S.A.I.C. and Vicentin S.A.I.C. Sucursal Uruguay, as guarantors, dated 26 July 2010, as amended from time to time, which provided Algodonera a line of credit for up to $30 million, the Algodonera Loan. |
| CAGSA Loan | IIG TOF provided a loan to Compañía Argentina de Granos S.A. ("**CAGSA**") as borrower and Molino Cañuelas S.A.C.I.F.I.A. ("**MOLCA**") pursuant to (i) a $18,5 million credit line agreement dated 18 July 2014 and (ii) a $15 million credit facility agreement dated 25 July 2014, both agreements as amended from time to time. |
| FRIAR Loan | IIG Capital, as agent, entered into a line of credit agreement with Frigorífico Regional Industrias Alimenticias Reconquista S.A. ("**FRIAR**") and Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay ("**FRIAR Uruguay**") dated 1 September 2009, as amended from time to time, which provided FRIAR and Friar Uruguay with a line of credit for up to $35 million, the FRIAR Loan. |
| Nacadie Loan | IIG Capital, as agent, entered into a line of credit agreement with Nacadie Commercial S.A. ("**Nacadie**") dated 1 September 2009, as amended from time to time, which provided Nacadie a line of credit for up to $20 million, the Nacadie Loan. The Nacadie Loan was amended twice by the parties. |
| Rasic Loan | IIG TOF provided a loan to Rasic Hnos S.A. ("**Rasic**") as borrower pursuant to a loan of an unknown date amounting to $1,827,717 as per 31 December 2017 according to IIG TOF's 2017 annual accounts, and the actual outstanding loan amount may differ from IIG TOF's records. |
| Saldana Loan | IIG TOF purportedly provided a loan to Saldana S.A. ("**Saldana**") pursuant to a credit facility agreement of 19 June 2014 amounting to $351,559 as per 31 December 2017 according to IIG TOF's 2017 annual accounts, and the actual outstanding loan amount may differ from IIG TOF's records. |
| SanCor Loan | IIG TOF provided a loan to Sancor Cooperativas Unidas Ltda. ("**Sancor**") as borrower and Sancor do Brasil Productos Alimenticios Ltda. ("**Sancor Brazil**") as surety pursuant to a $50 million credit facility agreement dated 21 December 2009, as amended from time to time. |
| Vicentin Group | Algodonera, FRIAR, FRIAR Uruguay and Nacadie. |
| Vicentin Group Loans | Collectively, the Algodonera Loan, the Nacadie Loan, and the FRIAR Loan and of which $22,868,025.74 (the "**Settlement Funds**") is held with the United States Bankruptcy Court in full and final settlement of the Vicentin Group Loans. This is to be split between the relevant parties per a settlement agreement dated March 2019 attached to this agreement as <u>Annex B</u>. |

**ANNEX B**

*settlement agreement re Vicentin Group Loans dated March 2019*

March, 2019

Dear Sirs
**NacadieComercial S.A.,**
**Frigorífico Regional IndustriasAlimenticias Reconquista S.A.,**
**Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Sucursal Uruguay,**
**Algodonera Avellaneda S.A.,**
**Vicentin S.A.I.C.,**
**Vicentin S.A.I.C. Sucursal Uruguay, and**
**SWAAS International Corporation S.A.**
Delivered by hand

### Ref.: Settlement Agreement Proposal - Offer No. 10010/2019

Dear Sirs,

We are writing to you to send you this irrevocable offer (hereinafter the "Proposal"), in order to reach a Settlement Agreement (the "AGREEMENT") for out-of-court resolution of all the existing controversies between IIG and Grupo Vicentin (as defined in Annex A) in relation to, derived from or linked to the Agreements, promissory notes, court, out-of-court and arbitration proceedings related thereto, pursuant to the terms and conditions exposed hereinbelow as Annexes to the Proposal.

This Proposal shall remain effective and it shall be irrevocable for IIG TOF B.V. ("IIG TOF") and Trade Finance Trust ("TFT") and jointly with IIG TOF "IIG") for a term of five (5) Business Days from the date of its receipt by you. It shall be deemed accepted by you if within said term you send to IIG a note in substantially similar terms to that contained in Annex B.

Should you accept this Proposal, the relationship between the Parties (as defined in Clause 1 of Annex A) will be governed by the terms and conditions exposed in Annex A, which shall be mandatory for the Parties and which shall be deemed effective from the date of acceptance of the Proposal.

Without further ado and sincerely,

_____

By: **IIG TOF B.V.** (represented by Trust International Management (T.I.M.) B.V.)

Name:

Title:


_____

By: **Trade Finance Trust** (represented by IIG Trade Finance LLC as Administrator)

Name:

Title:


[ALL SIGNATURES AND TITLES CERTIFIED BY A NOTARY PUBLIC]

# ANNEX A

## SETTLEMENT AGREEMENT PROPOSAL

This Proposal has been prepared taking into account the following recitals:

**(i)**      That on September 1, 2009, Nacadie entered into a Line of Credit Agreement with IIG Capital LLC ("**IIG Capital**"), through which IIG Capital granted Nacadie a line of credit for up to an amount of twenty million US dollars (USD 20,000,000.00.-) (the "**Nacadie Line of Credit**"). That said line of credit was amended twice; the First Amendment to the Line of Credit Contract dated December 29, 2011 and the Second Amendment to the Line of Credit Contract dated April 16, 2014;

**(ii)**      That on April 10, 2014, IIG Capital and IIG TOF subscribed a Transfer of Rights Agreement under the terms of which IIG Capital ceded in favor of IIG TOF all of its rights under the Nacadie Line of Credit;

**(iii)**      That on September 1, 2009, FRIAR and FRIAR Uruguay entered into a Line of Credit Contract with IIG Capital, through which IIG Capital granted FRIAR Uruguay a line of credit for up to an amount of thirty-five million US dollars (USD 35,000,000.00.-) (the "**FRIAR Credit Line**") and FRIAR was established as guarantor of the same. That this line of credit was amended six times; the First Amendment to the Line of Credit Contract dated October 29, 2010; the Second Amendment to the Line of Credit Contract dated January 7, 2011; the Third Amendment to the Line of Credit Contract dated March 31, 2011; the Fifth Amendment to the Line of Credit Contract dated December 29, 2011; the Sixth Amendment to the Line of Credit Contract dated November 6, 2012; and the Seventh Amendment to the Line of Credit Contract dated April 16, 2014;

**(iv)**      That on April 10, 2014, IIG Capital and IIG TOF signed a Transfer of Rights Agreement under the terms of which IIG Capital assigned to IIG TOF all of its rights under the FRIAR Credit Line;

**(v)**      That dated September 1, 2009, Nacadie (as trustee), Manfid S.A. (currently ITC Fiduciaria SA) (as trustee) and IIG Capital (as beneficiary and trustee) entered into a Guarantee Trust Agreement ("**Trust Agreement**") for which Nacadie transferred the trust property of the

shares representing 49% of the capital of FRIAR in guarantee of compliance with the obligations established in the Nacadie Credit Line and in the FRIAR Credit Line. That said Trust Agreement was amended twice, the First Amendment to the Guaranty Trust Agreement dated January 7, 2011 and the Second Amendment to the Guaranty Trust Agreement dated December 29, 2011;

**(vi)**    That on April 10, 2014, IIG Capital assigned its rights under the Trust Agreement in favor of IIG TOF;

**(vii)**    That on July 26, 2010, Algodonera, Vicentin, and Vicentin Uruguay entered into a Line of Credit Contract with IIG TOF, through which IIG TOF granted Algodonera a line of credit, under the revolving method, for up to an amount of thirty million US dollars (USD 30,000,000.00.-) (the "**Algodonera Credit Line**", and jointly with the Nacadie Line of Credit, and the FRIAR Credit Line, the "**Lines of Credit**"), and Vicentin Uruguay, and Vicentin were constituted as guarantor and co-guarantor of the same respectively. That this line of credit was amended four times; the First Amendment to the Line of Credit Contract dated October 13, 2011; the Second Amendment to the Line of Credit Contract dated October 26, 2012; the Third Amendment to the Line of Credit Contract dated April 10, 2014; and the Fourth Amendment to the Line of Credit Agreement dated July 14, 2016;

**(viii)**    That on December 29, 2011, IIG Capital and Nacadie entered into an Irrevocable Option for the Sale of Shares, through which IIG Capital irrevocably and exclusively granted Nacadie the right to sell 49% of the shares of FRIAR to their exclusive option and IIG Capital was forced to acquire them if Nacadie exercised such an option (subject to certain conditions), having paid the corresponding premium to that effect ("**Nacadie Option**");

**(ix)**    That on April 10, 2014, IIG Capital ceded in favor of IIG TOF its rights and obligations under the Nacadie Option;

**(x)**    That the Nacadie Option was modified by the First Amendment to the Irrevocable Option for the Sale of Shares on April 16, 2014, according to the terms of which the percentage of FRIAR Shares subject to the Nacadie Option was reduced to 44.79%. ;

**(xi)**    That on April 16, 2014, FRIAR, FRIAR Uruguay, Nacadie, and Algodonera entered into a Payment by Subrogation Agreement with IIG TOF, through which Algodonera assumed the

obligation to pay the interest payments owed by FRIAR, FRIAR Uruguay, and Nacadie to IIG TOF on the occasion of the FRIAR Credit Line and the Nacadie Credit Line, and as a result of these payments, Algodonera would obtain a loan against FRIAR, FRIAR Uruguay, and Nacadie that they could later use to pay off the debt they had with IIG TOF emerging from the Algodonera Credit Line ("**Payment by Subrogation Agreement**");

**(xii)**   That the Parties maintain differences with respect to the rights that each Party had under the Credit Lines, the Trust Agreement, the Nacadie Option, and the Payment for Subrogation Agreement (together the "**Contracts**"), which motivated the beginning of a series of processes that are detailed in the following recitals;

**(xiii)**   That in the months of June and July 2017, Algodonera, FRIAR, FRIAR ROU, Vicentin, and Nacadie (the latter as an interested third party), requested the issuance of self-satisfying measures before the First Instance Civil and Commercial Courts of Reconquista , Santa Fe (FRIAR SA c / IIG TOF BV s / Self-satisfying measure, File N ° 211/2017 and Algodonera Avellaneda and Others c / IIG TOF BV s / Self-satisfying measures, File N ° 001/2017), in order to obtain a precautionary measure to prevent IIG TOF from executing the promissory notes given as collateral for the FRIAR Credit Line and the Algodonera Credit Line (hereinafter the "**Self-Sufficient Measures**");

**(xiv)**   That on June 26, 2017, IIG TOF filed with the National Court of First Instance in the Commercial No. 30, Secretariat No. 59, of the Autonomous City of Buenos Aires, Argentina, against FRIAR and FRIAR Uruguay the execution of certain promissory notes issued in guarantee of the FRIAR Credit Line (IIG TOF BV c / Frigorífico Regional IndustriasAlimenticiasReconquistas SA and other s / Executive, File N ° 13899/2017) (this process, with all its incidents, hereinafter the "**FRIAR Executive Proceedings**");

**(xv)**   That on June 26, 2017, IIG TOF filed with the National Court of First Instance in the Commercial No. 31, Secretariat No. 62, of the Autonomous City of Buenos Aires against Vicentin, Vicentin Uruguay, and Algodonera the execution of certain promissory notes issued in guarantee of the Algodonera Credit Line (IIG TOF BV c / Algodonera Avellaneda SA and others s / Executive, File N ° 13895 / 2017) (this process, with all its incidents, from now on the "Algodonera Executive Proceedings" and together with the FRIAR Executive Judgment, the "**Executive Proceedings**");

**(xvi)**    That on August 2, 2017, Nacadie, FRIAR, FRIAR Uruguay, Algodonera, Vicentin, and Vicentin Uruguay filed an arbitration proceeding before the International Chamber of Commerce based in Buenos Aires, Argentina, against IIG TOF, pursuant to the arbitration clause contained in the Nacadie Option (NacadieComercial S.A. et al., c. / IIG TOF BV, CCI No. 22998 / JPA) (hereinafter, the "**Buenos Aires Arbitration**");

**(xvii)**    That on October 17, 2017, IIG TOF filed with the International Chamber of Commerce an arbitration proceeding based in Washington, DC, United States, against Nacadie, FRIAR, and FRIAR Uruguay under the arbitration clauses contained in the Line of Credit Nacadie and in the FRIAR Credit Line (IIG TOF BV c / NacadieComercial S.A. et al., CCI No. 23153 / JPA) (hereinafter, the "**Washington Arbitration**" and together with the Buenos Aires Arbitration, the "**Arbitrations**" );

**(xviii)**    On November 3, 2017, Algodonera, Vicentin Uruguay, Vicentin, FRIAR Uruguay, FRIAR, initiated a "Discovery" procedure in the New York Courts (Application of Algodonera Avellaneda S.A., et. Al., For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, File No. 1: 17-mc-00437-PGG), in order to obtain documents held by the Deutsche Bank Trust Company Americas, linked to the Executive Trials. The Court of New York admitted the order, by order dated November 10, 2017 (said process, hereinafter, "**Discovery**")

**(xix)**    That IIG TOF requested that the Trade Finance Trust and Trade Opportunities Fund N.V be included as part of the Washington Arbitration, a request that was rejected by the Arbitration Tribunal in that case;

**(xx)**    That in the month of August of 2017, FRIAR, Algodonera, Vicentin, and Nacadie, filed a criminal complaint with the Public Prosecutor's Office, Regional Tax Unit No. 4, Reconquista, Santa Fe (Argentina) (the "**Criminal Complaint**");

**(xxi)**    That on April 16, 2018, representatives of IIG TOF filed a criminal complaint with the National Criminal and Correctional Court, for the purposes of ordering the First Instance Judge of Reconquista to refrain from continuing to process the criminal complaint referred to in the previous recital (the "**Criminal Inhibitor**");

**(xxii)**  That the Vicentin Group, in exercise of its right of defense, has sent several communications to Trilinc Global Impact Fund., made several inquiries, and contacted different third parties;

**(xxiii)**  That the Parties disagree about the relevance, accuracy, and effects of the alleged transfer by IIG TOF of a portion of its rights and obligations over the Credit Lines to TFT; and

**(xxiv)**  That it is the intention of the Parties to reach an agreement in order to put an end to the totality of the disputes that currently exist between them.

**THEREFORE**, in consideration of the foregoing and the mutual promises included in this Proposal, the Parties agree to the following **CLAUSES**:

**CLAUSE ONE**

**OBJECTIVE**

**1.1.** The objective of this Proposal is to establish a Settlement Agreement ("**AGREEMENT**") between IIG TOF B.V., a company created and existing pursuant to the laws of the Kingdom of the Netherlands (hereinafter "**IIG TOF**"); Trade Finance Trust, a trust created and existing pursuant to the laws of the Delaware state of the United States (hereinafter "**TFT**" and jointly with IIG TOF, "**IIG**"); on the one hand, and, on the other hand, Nacadie Comercial S.A., a company created and existing under the laws of the Oriental Republic of Uruguay (hereinafter "**Nacadie**"); Frigorífico Regional Industrias Alimenticias Reconquista S.A., a corporation (sociedad anónima) created and legally existing pursuant to the laws of the Argentine Republic (hereinafter "**FRIAR**"); Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay, a branch of Frigorífico Regional Industrias Alimenticias Reconquista S.A., pursuant to the laws of the Oriental Republic of Uruguay (hereinafter "**FRIAR Uruguay**"); Algodonera Avellaneda S.A., a corporation (sociedad anónima), created and legally existing pursuant to the laws of the Argentine Republic (hereinafter "**Algodonera**"); Vicentin S.A.I.C., a corporation (sociedad anónima), created and legally existing pursuant to the laws of the Argentine Republic ("**Vicentin**"), Vicentin S.A.I.C. Sucursal Uruguay, a branch of Vicentin S.A.I.C., pursuant to the laws of the Oriental Republic of Uruguay (hereinafter "**Vicentin Uruguay**" and jointly with Nacadie, FRIAR, FRIAR Uruguay, Algodonera and Vicentin, hereinafter "**Vicentin Group**"); and SWAAS International Corporation S.A., a corporation (sociedad anónima) created and legally existing pursuant to the laws of Panama (hereinafter "**SWAAS**");   IIG, Grupo Vicentin and

SWAAS sometimes individually referred to in this AGREEMENT as "**Party**" and jointly as the "**Parties**".

**1.2.** The objective of the AGREEMENT of the Parties is the out-of-court resolution of all the disputes between IIG and the Vicentin Group in relation, derived or related to the Contracts, promissory notes, judicial, extrajudicial, and arbitration related to them. The AGREEMENT implies the express recognition by the Parties of the termination of the obligations arising from the Contracts and/or relationships that bind them and the waiver of any right, action or claim, present or future, through arbitration or contentious, resulting from or in connection with said Contracts and/or relationships.

**CLAUSE TWO**

**VICENTIN GROUP PAYMENT**

Subject to compliance with the transfer of the AMOUNT (as defined below), the Parties agree to irrevocably terminate their disputes, subject to all existing arbitral, extrajudicial and judicial proceedings and / or in any other way related to the Contracts and / or relationships that bind them, in exchange for payment, single and for all purposes (with the exception of the VAT portion indicated in Annex I), of thirty-one million three hundred thousand US dollars (US $31,300,000.00) (hereinafter the "AMOUNT") to be made by Algodonera, FRIAR₇, and SWAAS directly, or by any Vicentin Group company on account and order thereof, to IIG and Marcelo Gebharddt, Martin Caride Meabe, Francisco Colombo and Aguirre Saravia & Gebhardt Abogados S.R.L.in the manner and ratios provided in Clause Three below.

**CLAUSE THREE**

**CONDITIONS AND FORM OF PAYMENT OF THE AMOUNT**

**3.1.**    Within5 business days after (i)the sending by Vicentin Group  and SWAAS to IIG of the acceptance note of the Proposal and (ii) the Gowland Notary Public, Notary Public Francisco Lartirigoyen receives the documents that must be delivered to him in the terms of this Proposal, whichever occurs later, FRIAR, Algodonera and SWAAS directly, or by any company of the Vicentin shall transfer the amount of US $ 300,000 ("Initial Payment") to the account detailed in Annex I, I.A. The initial payment is made for the following concepts:(I) the sum of US $ 91,169 in partial cancellation of the Algodonera Credit Line; (II) the sum of US $ 124,660in partial cancellation of the FRIAR Credit Line; (III) the sum of US $ 84,171 in partial consideration for the assignment of IIG of all rights related to the Nacadie Credit Line.

**3.2.**    Within a term of 30 business days from the (i) sending by Grupo Vicentin and SWAAS to IIG of the acceptance note of the Proposal and (ii) Gowland Notary Public Office, Notary Public Francisco Lartirigoyen, receives the documents that must be delivered to him in the terms of this Proposal, whichever occurs later, the balance of the AMOUNT (USD 31,000,000),shall be transferred, being valid for settling debts, by FRIAR, Algodonera and SWAAS directly, or through any company of the VicentinGroup and/or of SWAAS on the account and to the order of these to the accounts and for the amounts detailed in Annex I. The AMOUNT shall be paid by Algodonera, FRIAR and SWAAS directly, or by any company of the Vicentin Group on the account and to the order of these for the following concepts: (I) the sum of US $ 8,040,152 in cancellation of Algodonera Credit Line; (II) the sum of US $ 11,995,468 shall be paid in cancellation of the FRIAR Credit Line;(III) the sum of US $ 8,489,380 shall be paid as consideration for the assignment by IIG of all the rights related to the Nacadie Credit Line; and (IV) the sum of US $ 2,475,000 (plus VAT and minus retentions pursuant to law) shall be paid by Vicentin Group by way of fees of Marcelo Gebharddt, Martin CarideMeabe, Francisco Colombo and Aguirre Saravia & Gebhardt Abogados S.R.L. Within the 12 business hours following the transfers issuing, the attorneys of Vicentin Group shall send to IIG a receipt acknowledging the transfer of the AMOUNT through an e-mail addressed to IIG a receipt acknowledging the transfer of the AMOUNT through an e-mail addressed to Anibal.Sabater@chaffetzlindsey.com, Rainbow.Willard@chaffetzlindsey.com and mgebhardt@asgabogados.com.ar.

**3.3.**    In the event that Algodonera, FRIAR, SWAAS, and/or any company of the Vicentin Group do not timely effect the transfer of the AMOUNT as provided in Clauses 3.1 and 3.2, IIG shall have the option to (i) immediately claim the AMOUNT, accruing from default a nominal interest of a nominal 10% on the AMOUNT until the date of effective cancellation, or (ii) resolving this AGREEMENT as of right by returning things to their previous status as if this AGREEMENT had not existed. Within 5 days after the expiration of the payment term of the IIG AMOUNT payment, the Vicentin Group and SWAAS must be notified via one of the two options it has opted for. In the event that IIG decides to terminate the AGREEMENT, it shall immediately reimburse the Vicentin Group for any amount received under this AGREEMENT, except for the Initial Payment that shall be held as penalty for breach. Likewise, in such case, the Parties will continue the existing arbitration and judicial proceedings, and, without prejudice to the fact that they will lack any virtue, the Parties will restitute the documents that they have signed under this AGREEMENT.

**3.4.** The transfer of the AMOUNT to the accounts mentioned in Annex I will have a cancellation effect of all the pecuniary obligations of the Vicentin Group.  It will be the responsibility of the Chaffetz Lindsey LLP Studio to distribute the funds in accordance with the instructions of IIG, without altering said acts or the consequences thereof the cancellation effect of the payment made by the Vicentin Group and by SWAAS, the validity of this AGREEMENT and the other acts

granted in virtue of it. This, independent of the rest of the obligations arising from this AGREEMENT that the Parties must comply with.

## CLAUSE FOUR
## THE ASSIGNMENT

**4.1.** As an essential condition of this AGREEMENT, and subject to the payment of the transfer price, IIG (assignor) transfers and transfers to SWAAS all the rights and obligations it holds under the Nacadie Credit Line, subscribing the contract for such purposes of assignment whose model is attached as Annex II. As for the assignment, SWAAS becomes the sole and exclusive holder of the rights and credits derived from the Nacadie Credit Line.

**4.2.** IIG will send, by express courier within 48 hours after the sending of this AGREEMENT Proposal to the Notary Public Gowland, Notary Francisco Lartirigoyen, for escrow, a copy of the Assignment Agreement duly signed, 1 copy of the notification letter to the assigned debtor in the terms of the Annex to the assignment contract model, the Nacadie Line of Credit Contract original, the promissory note paid under it and all documents linked to the Nacadie Credit Line. In the 12 hours after IIG TOF B.V. sign the Assignment Agreement, the lawyers of IIG will send an email to the Curtis, Mallet, Prevost-Colt &Mosle Firm (Buenos Aires Office) with an electronic copy of the signature. Within 24 hours of the sending of this AGREEMENT Proposal, SWAAS will deliver in escrow to the Gowland Notary Public, Notary Public Francisco Lartirigoyen a copy of the assignment contract duly signed jointly with a copy of the notification to the assigned debtor.

**4.3.** Once the AMOUNT has been credited in the accounts indicated in Annex I, the Chaffetz Lindsey LLP Firm (through Anibal Sabater and /or Rainbow Willard and /or any other partner) and the Curtis, Mallet, Prevost-Colt &Mosle Firm ( Buenos Aires Office) through any partner will instruct together by email to egowland@escribaniagowland.com.ar and/or flartirigoyen@escribaniagowland.com.ar to deliver the copy signed by IIG to Curtis, Mallet, Prevost-Colt &Mosle Firm (Buenos Aires Office) - Attention: Luis Maria Ayarragaray and/or Esteban Daireaux, and the copy signed by SWAAS at Aguirre, Sarabia& Gebhardt Firm - Attention: Alejandro Daniel Villaverde and/or Martin CarideMeabe.

**4.4.** The price of the Assignment is set at the sum of US $ 8,573,551.- that SWAAS, or any company of the Vicentin Group on its behalf, will pay in the manner provided in Clauses 3.1 and 3.2 of this AGREEMENT Proposal. The acceptance of this AGREEMENT Proposal contains and constitutes by itself the granting of any consent that the law or applicable contracts may require from the signatories for the execution of the assignment provided in this Clause.

**CLAUSE FIVE**

**EXECUTIVE PROCEEDINGS AND COSTS**

**5.1.** In the 5 business days following the accreditation of the AMOUNT deposit in the accounts and for the amounts detailed in Clause 3.2 and Annex I, the Parties will terminate the Executive Proceedings, waiving IIG TOF's action and rights under the FRIAR Executive Proceedings, stating that there is nothing to complain about, under any circumstances, under the AlgodoneraExecutiveProceedings.

**5.2.** For such purposes,IIG shall sign at the moment of sending the Proposal and Vicentin Group at the moment of acceptance the written documents of which the models are attached in Annex III, whereby they also request and consent to the immediate lifting of the precautionary measures, the release of the surety bond and the liens, and the transfer of the embargo funds to the defendants in the Executive Proceedings. The written documents will remain in escrow at the Gowland Notary Public, Notary Public Francisco Lartirigoyen until the Chaffetz Lindsey LLP Firm (through Anibal Sabater and / or Rainbow Willard and / or any partner),the Aguirre Sarabia & Gebhardt Firm (through Marcelo Gebhardt or Alejandro D. Villaverde  or Martin Caride Meabe) and the Curtis, Mallet, Prevost-Colt &Mosle Firm (Office of Buenos Aires) (Luis Ayarragaray or Esteban Daireaux or Manuel Lanusse) will instruct you by email to egowland@escribaniagowland.com.ar and / or flartirigoyen@escribaniagowland.com.ar to deliver the written documents received at Curtis, Mallet, Prevost-Colt &Mosle Firm (Oficina de Buenos Aires) Aires) - Attention: Luis Maria Ayarragaray and/or Esteban Daireaux.

**5.3.** The Parties agree that the costs of the Executive Proceedings shall be in their order, being the expenses of the Party that have incurred to date (including the Party's justice fees that initiated the instance), as the fees of their own lawyers, regardless of whether there has been a conviction in costs in the Executive Proceedings, at the expense of each Party. For such purposes, the Parties hereby sign the written documents signed by the lawyers intervening in the Executive Trials, stating that they have nothing to demand to the counterpart, whose models are attached in Annex IV. The written documents will remain in escrow at the Gowland Notary Public, Notary Public Francisco Lartirigoyen until the Chaffetz Lindsey LLP Firm (through Anibal Sabater and / or Rainbow Willard and / or any partner),the Aguirre Sarabia & Gebhardt Firm (through Marcelo Gebhardt or Alejandro D. Villaverde  or Martin Caride Meabe) and the Curtis, Mallet, Prevost-Colt & Mosle Firm (Office of Buenos Aires) (Luis Ayarragaray or Esteban Daireaux or Manuel Lanusse) instruct you jointly by email to egowland@escribaniagowland.com.ar and / or flartirigoyen@escribaniagowland.com.ar to deliver the written documents signed by the IIG lawyers to the Curtis, Mallet, Prevost-Colt

&Mosle (Buenos Aires Office) - Attention: Luis Maria Ayarragaray and/or Esteban Daireaux and the written documents signed by the lawyers of the Vicentin Group at Aguirre, Sarabia& Gebhardt Firm - Attention: Alejandro Daniel Villaverde and/or Martin CarideMeabe.

**5.4.** The Parties mutually agree to hold the counterparty harmless against any claim that third parties, acting on their behalf, may perform against the other party, being reciprocally entitled to retain any amount, which they must pay to the counterparty under this AGREEMENT, to compensate any sum that they have paid to third parties for obligations assumed by the counterparty under this AGREEMENT.

## CLAUSE SIX

## ARBITRATIONS AND COSTS

6.1.    Within 48 business hours after depositing the AMOUNT in the Chaffetz Lindsey LLP Firm account as provided in Clause 3.2., The Parties will terminate the Arbitration, withdrawing the Vicentin Group from the Buenos Aires Arbitration and withdrawing both IIG TOF from the Washington Arbitration and the Vicentin Group of the conditional counterclaim formulated therein. For such purposes, IIG shall sign at the moment of sending the Proposal and Vicentin Group at the moment of acceptance, the written documents whose models are attached in Annex V and which will be exchanged via e-mail in PDF format at the moment of acceptance of this Proposal. These written documents will be sent to the respective arbitral tribunals and to the International Chamber of Commerce ("**CCI**"). The Chaffetz Lindsey LLP Firm keeps in escrow the corresponding letter to the Arbitration of Washington and the Curtis, Mallet, Prevost-Colt &Mosle (Buenos Aires Office) keeps in escrow the corresponding letter to the Buenos Aires Arbitration. Once the Chaffetz Lindsey LLP Firm confirms the receipt of the AMOUNT, the corresponding writings will be sent to the CCI.

6.2.    The Parties agree that the costs and expenses of the Arbitration are in their order, being each party the exclusive responsibility of the fees of each of its own attorneys and the expenses in which each Party has incurred and / or assumed and / or accrued and / or canceled to date (without either of the Parties being able to request from the other the reimbursement - total or partial - of payments already made).

6.3.    Likewise, in the event that the sums paid by the Parties for the advance of expenses in each Arbitration reach to support the expenses accrued in the Arbitration in which they were integrated, and the ICC International Court of Arbitration provides for the restitution of the balance that may exist, such balance shall be reimbursed between the Parties in the corresponding proportion according to the total advance paid by each Party in the Arbitration

in question. This, regardless of the form of reimbursement established by said Court. The expenses additional to those previously mentioned that may be paid by order of the International Court of Arbitration of the ICC must be borne by 50% by each Party independent of the form of taxation established by said Court.


## CLAUSE SEVEN

## CRIMINAL PROCEEDINGS

**7.1.** Considering that the criminal complaint refers to crimes of public action, the Vicentin Group cannot desist from it. Notwithstanding the foregoing, withinthe 5 business days of the deposit of the AMOUNT in the Chaffetz Lindsey LLP Firm account as provided in Clause 3.2 and Annex I, the Vicentin Group will inform the intervening Court in the terms of the model attached as Annex VI, which has reached an economic agreement with IIG TOF and will refrain in any way from processing the file or any existing or future proceedings against IIG TOF, TFT, IIG Global Trade Finance Fund Ltd., IIG Trade Opportunities Fund NV, and Trade Finance Funding I BV, or any other entity related to the IIG Group and its legal representatives. In addition, the Vicentin Group will use its best efforts in good faith and will do everything possible so that the case derived from the Criminal Complaint is irrevocably dismissed.

**7.2.**The Vicentin Group will sign at the moment of acceptance of the Proposal, a written document in the terms of the model attached as Annex VI, and it will remain in escrow at the Gowland Notary Public, Notary Francisco Lartirigoyen until the Chaffetz Lindsey LLP Firm (through Anibal Sabater and / or Rainbow Willard and/or any member) and the Studio Curtis, Mallet, Prevost-Colt &Mosle (Buenos Aires Office) jointly instructed by email to egowland@escribaniagowland.com.ar  and/or  flartirigoyen@escribaniagowland.com.ar  to deliver the documents received to Aguirre , Sarabia& Gebhardt Firm (At. Dr. Alejandro Villaverde). The document may be submitted by IIG TOF if the Vicentin Group does not submit it within the next 5 business days of receipt of the instruction mentioned in the previous paragraph.

**7.3.** For its part, IIG TOF will inform the Court intervening in the Criminal Inhibitor in the terms of the document whose model is attached as Annex VII, which has reached an economic agreement with the Vicentin Group and will refrain from promoting the processing of the file in any way.  IIG TOF will deliver at the moment of sending the Proposal a signed copy of the written documents in escrow to the Gowland Notary Public, Notary Francisco Lartirigoyen until the Chaffetz Lindsey LLP Firm (through Anibal Sabater and/or Rainbow Willard and / or any

partner) and the Curtis Firm, Mallet, Prevost-Colt &Mosle Firm (Buenos Aires Office) jointly instructed by email to egowland@escribaniagowland.com.ar y/o flartirigoyen@escribaniagowland.com.ar to deliver the documents received at Curtis, Mallet, Prevost- Colt &Mosle Firm(Buenos Aires Office). In any case, if Vicentin Group or any of the entities that comprise it becomes aware of any action taken by the judge or prosecutor of the Criminal Complaint (including its dismissal) will notify that action to IIG within 24 working hours after knowing it, through an email addressed to Anibal.Sabater@chaffetzlindsey.com and Rainbow.Willard@chaffetzlindsey.com.

## CLAUSE EIGHT

## ADMINISTRATIVE INVESTIGATIONS

The Vicentin Group declares that no company of the Vicentin Group, or anyone related to the Vicentin Group, has neither filed a complaint nor accepted to intervene in response to the requirements received, before any government entity or agency independent of the government of The United States of America, including without limitation, the SEC, on a matter related to Lines of Credit or to IIG, IIG TOF, TFT, IIG Global Trade Finance Fund Ltd., IIG Trade Opportunities Fund N.V., and Trade Finance Funding I B.V. or any other entity related to the IIG Group or its legal representatives.

## CLAUSE NINE

## CANCELLATION OF THE TRUST. RELEASE OF FRIAR SHARES

**9.1.** Together with the acceptance of the Proposal by the Vicentin Group and SWAAS of this AGREEMENT, IIG TOF, and Nacadie formalize with ITC Fiduciaria S.A. (former Manfid S.A.) a contract of termination and cancellation of the Trust Agreement, in the terms of the model that is added as Annex VIII. Each of the parties signs a copy, with the contract consisting of the 3 copies together. Consequently, from the payment of the AMOUNT provided in Clause 3.2, The Trust Agreement will be without effect, with the Parties accepting that the FRIAR shares affected to the trust will be transferred immediately and without any condition in full ownership in favor of Nacadie.

**9.2.** IIG will send by express courier within 48 hours after the signing of TFT of this AGREEMENT Proposal to the Notary Public Gowland, Notary Public Francisco Lartirigoyen, for deposit in escrow, two signed copies of the contract. In the 12 hours after IIG TOF B.V. sign the termination contract, the lawyers of IIG will send an email to the Curtis, Mallet, Prevost-Colt

&Mosle Studio (Buenos Aires Office) with an electronic copy of the signature. Nacadie and ITC Fiduciaria S.A. will deliver within 24 hours of their acceptance of the Proposal, their signature in escrow to the Gowland Notary Public, Notary Francisco Lartirigoyenin two signed copies of the contract. Once the AMOUNT has been credited in the accounts indicated in Annex I, the Chaffetz Lindsey LLP Firm (through Anibal Sabater and /or Rainbow Willard and /or any other partner) and the Curtis, Mallet, Prevost-Colt &Mosle Firm( Buenos Aires Office) through any partner will instruct together by email to egowland@escribaniagowland.com.ar and/or flartirigoyen@escribaniagowland.com.ar to deliver the copies signed by IIG to Curtis, Mallet, Prevost-Colt &Mosle Firm (Buenos Aires Office) - Attention: Luis Maria Ayarragaray and/or Esteban Daireaux and a copy signed by Nacade and ITC Fiduciaria S.A. to Aguirre, Sarabia& Gebhardt Firm - Attention: Alejandro Daniel Villaverde and/or Martin CarideMeabe.

## CLAUSE TEN

### DECLARATIONS AND GUARANTEES

The Parties declare and guarantee each other that:

**(A)** The Parties have full right, power and authority, and have taken all necessary actions to celebrate and execute this AGREEMENT, and to comply with the obligations established therein. This AGREEMENT has been duly authorized, entered into and delivered by the Parties, and constitutes legal, valid and binding obligations, enforceable against the Parties in accordance with its terms; and

**(B)** The Parties have requested the revision of this AGREEMENT Proposal to their competent attorneys and have received advice in relation to the celebration and execution of this AGREEMENT and the fulfillment of the obligations in accordance with this AGREEMENT Proposal.

## CLAUSE ELEVEN

### LEGAL OPINIONS AND CONFORMITY
### ADDITIONAL DOCUMENTATION

**11.1.** The Vicentin Group will deliver at the moment of acceptance of the Proposal to IIG TOF a legal opinion signed by the Curtis Firm, Mallet-Prevost, Colt &Mosle, Buenos Aires Office, which is attached hereto as Annex IX, which is issued on the legality of this AGREEMENT in relation to the capacities, commitments assumed, and resignations made by the Vicentin Group.

**11.2.** IIG will deliver jointly with the sending of the Proposal to the Vicentin Group a legal opinion subscribed by the Connolly Gallagher LLP Firm of Delaware LLP on behalf of TFT, and another one subscribed by the Blenheim Firm of the Netherlands on behalf of IIG TOF, which

are attached hereto as Exhibit X, which are issued on the legality of this AGREEMENT in relation to the capacities, commitments assumed, and resignations made by IIG.

**11.3.**   IIG will send, within 48 hours after TFT signs this AGREEMENT Proposal, to the Notary Public Gowland, Notary Public Francisco Lartirigoyen, for deposit in escrow, (i) conformities with the terms of this AGREEMENT subscribed by IIG Global Trade Finance Fund Ltd., IIG Trade Opportunities Fund NV, and Trade Finance Funding I BVwhich are attached hereto as Exhibit XI and in which said entities state that they have nothing to claim from the Vicentin Group and (ii) 2 copies of the clearance letters issued by IIG TOF B.V. and TFT attached hereto as Annex XI B. In the 12 hours following the signature of the aforementioned entities, the lawyers of IIG will send an email to the Curtis, Mallet, Prevost-Colt &Mosle Firm (Buenos Aires Office), accompanied by electronic copies of the signatures.  The Notary Public Gowland, Notary Public Francisco Lartirigoyen will deliver the conformities and the clearance letters to Luis María Ayarragaray and/or Esteban Daireaux and/or Manuel Martín Lanusse once the Chaffetz Lindsey LLP Firm and the Curtis, Mallet, Prevost-Colt &Mosle Firm send you the expected email in the Fifth Clause.

**11.4.**   IIG TOF will deliver in escrow, to the Notary Public Gowland, Notary Public Francisco Lartirigoyen the promissory notes that are detailed in Annex XII and declares that it has no other promissory note subscribed by the companies conforming the Vicentin Group. IIG will be responsible  for the damages arising from the falsity of said manifestation and for the damages arising from the execution of any title held by IIG and/or circulated, endorsed or transferred by it. The Notary Public Gowland, Notary Public Lartirigoyen will deliver the promissory notes to Luis María Ayarragaray and/or Esteban Daireaux and/or Manuel Martín Lanusse once the Chaffetz Lindsey LLP Firm and the Curtis, Mallet, Prevost-Colt &Mosle Firm send you the expected email in the Fifth Clause.

**11.5.**   The Parties undertake to deliver any other writing or additional document that is necessary to reflect the terms of the agreement in this AGREEMENT and/or to be presented before any governmental authority.

### CLAUSE TWELVE

### CONFIDENTIALITY

Except for the first paragraph of the Second Clause of the AGREEMENT Proposal, the remaining terms of this AGREEMENT and the negotiations that preceded it are strictly confidential and will not be disclosed to third parties without the prior written consent of the other Parties, except: (i) to the auditors and legal, financial, and fiscal advisers, consultants and banks of the Parties, provided that the information is disclosed under confidentiality obligations imposed on any of those parties; (ii) the affiliates of the Parties, and their respective auditors, legal, financial, and fiscal advisors, consultants, and banks, in terms that preserve confidentiality; (iii) in the event that its disclosure is required by law or pursuant to (or in response to) an order of a court or

tribunal having jurisdiction, or in accordance with (or in response to) any order, demand, or request made by any competent authority or body (including, without limitation, any stock exchange or self-regulatory body); and (iv) that the party disclosing the information deems it necessary to disclose it to implement, enforce, or obtain the benefit of any of the terms of this AGREEMENT, and/or the Settlements or matters contemplated in this Proposal.

## CLAUSE THIRTEEN

### DISCLAIMER OF FUTURE ACTIONS OR PRETENSIONS AND COVENANT NOT TO SUETERMINATION OF OBLIGATIONS

13.1.   Subject to payment of the AMOUNT, the Parties reciprocally and expressly waive any action, claim, right, damage, or compensation, current and/or future, exercisable through arbitration or litigation, or any other way, that may have against any of the Parties and/ or its related companies and /or any of its representatives and/or directors and/or officers and/or advisors and/or attorneys and/or agents and/or commercial representatives, resulting from or in connection with the contracts and/or the processes that link them and/or the relationships maintained to date.

13.2.   It is duly clarified and agreed between the Parties that this AGREEMENT replaces and cancels any other link and/or relationship that may exist between the Parties, even if it is not implemented in any of the documents identified in the recitals of this AGREEMENT Proposal; in such a way that the rights and obligations arising from this AGREEMENT are the only and exclusive that subsist between the Parties as of their formalization, being canceled with force of payment any other commitment, credit, or obligation that may exist to date.

13.3.   Once the obligations set forth in this AGREEMENT have been fulfilled, there will be no obligation pending compliance, benefit, or payment by the Parties. The obligations arising from this AGREEMENT Proposal are the only ones that may be claimed by the Parties through judicial, arbitral, or extrajudicial means.

13.4.   The Parties agree that, once the obligations agreed in this AGREEMENT have been fulfilled, it will have an extinguishing effect on the obligations assumed between the Parties.

## CLAUSE FOURTEEN

### APPLICABLE LAW AND ARBITRATION

All disputes arising from this AGREEMENT Proposal or that relate to it will be resolved in accordance with the Rules of Arbitration of the International Chamber of Commerce in force at

that moment, by three arbitrators appointed in accordance with the aforementioned regulations. The seat of the arbitration will be Montevideo (Uruguay), the language to be used in the arbitration procedure will be Spanish and the substantive law will be that of the Argentine Republic, without application of its standards of conflict of laws.

### CLAUSE FIFTEEN

### TOTAL AGREEMENT OF EXPRESS WILL OF THE PARTIES

The text of this AGREEMENT Proposal is the express and total expression of the free and spontaneous will of the Parties in relation to the matter contained herein, so any conversation, promise or agreement related to this AGREEMENT that has not been included in it does not have any value and, therefore, the Parties affirmatively declare that any representation, promise, or agreement related to this Settlement that has not been included in this AGREEMENT Proposal does not bind them or generates obligations. The Parties declare that under this AGREEMENT any other negotiation, document, or letter of intent concluded between the Parties prior to the present and that would have had the same object, is without effect.

### CLAUSE SIXTEEN

### VALIDITY

This AGREEMENT will become effective on the date of acceptance of the Proposal by Vicentin Group and SWAAS.

### CLAUSE SEVENTEEN

### DISCOVERIES

If a party discovers in any way that any of the statements and declarations made and accepted in this Proposal are not true, or it is false, it may claim damages by exercising the rights that correspond to it according to the law.

### CLAUSE EIGHTEEN

### DOMICILES - SIGNATURE AND REPRESENTATIVES

**18.1.** For any legal purposes derived from this Proposal, the Parties constitute special domiciles at the places indicated below, where any communications, summons, notices and claims shall be valid, whether judicial or extrajudicial, made in relation to this Proposal:

**IIG TOF B.V.** (company created and existing pursuant to the laws of the Kingdom of the
Netherlands)
Telesstone 8, Teleport, Naritaweg 165, P.O. Box 7241,
1007 JE, Amsterdam,
Holland

**Trade Finance Trust** (a trust created and existing pursuant to the laws of the Delaware state of
the United States)
1500 Broadway, 26th floor
NY 10036, Nueva York
United States

**NacadieComercial S.A.**
Ruta 8 Km 17.500, Zonamerica Business and Technology Park,
Edificio 200 Oficina 2008-10,
91600, Montevideo,
Oriental Republic of Uruguay

**Frigorífico Regional IndustriasAlimenticias Reconquista S.A.,**
Boulevard Hipólito Irigoyen 298,
3560, Reconquista, Santa Fe,
Argentine Republic

**Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Sucursal Uruguay,**
Dr Luis Bonavita 1294 oficina 411, WTC Free Zone,
11300, Montevideo,
Oriental Republic of Uruguay

**Algodonera Avellaneda S.A.**
Av. San Martín, Esquina Calle 14,
3560, Reconquista, Santa Fe
Argentine Republic

**Vicentin S.A.I.C.**
Calle 14, N° 495, Reconquista,
3560, Santa Fe
Argentine Republic

**Vicentin S.A.I.C., Sucursal Uruguay**

Dr Luis Bonavita 1294 oficina 412, WTC Free Zone,

11300, Montevideo

Oriental Republic of Uruguay

**SWAAS International Corporation S.A.**

Aquilio de la Guardia 8,

Panama

Panama

**18.2.** The Proposal shall be made and accepted as follows:

a) IIG TOF will sign eleven (11) copies of the Proposal in Holland. Two of which must contain the corresponding apostille. They will be sent by express courier to the TFT representative in New York.

b) Within 48 working hours of receiving the eleven (11) signed copies, TFT will sign them in New York, United States. Two of which must contain the corresponding apostille. They will be sent by email and by express courier to the representatives of the Vicentin Group in Buenos Aires, Argentina.

c) Within 48 working hours of receiving the eleven (11) signed copies of the Proposal, the Vicentin Group Parties will sign the eleven (11) copies. Two of which must contain the corresponding apostille. In case of acceptance of this Proposal, Ezequiel Segal y/o Uriel Szarfsztejn in representation of IIG will be present at the signing of the eleven (11) copies of the acceptance note of the Proposal, under the terms of the note whose model is attached as Annex B, and will keep the three (3) copies belonging to IIG TOF and TFT, one of which will be attached withthe corresponding apostille.

**18.3.** IIG designates indistinctly to Anibal Sabater, Rainbow Willard, Ezequiel Segal and/or Uriel Szarfsztejn, Ricardo Barreiro and/or Juan Pablo de Luca,, as their representatives to receive any of the documents that must be delivered under the terms of this AGREEMENT.

**18.4.** Vicentin Group indistinctly designates Luis Maria Ayarragaray and/or Esteban Daireaux and/or Manuel Martín Lanusse as their representatives to receive any of the documents that must be delivered under the terms of this AGREEMENT.

**ANNEX I**

**PAYMENT OF THE AMOUNT / ACCOUNTS**

**BANK DATA**

**I.    Chaffetz Lindsey LLP Firm Account**

A.    Bank Data

Citibank, N.A.
153 East 53rd Street
New York, New York 10043 USA
Account Name: Chaffetz Lindsey LLP
Account Number: 9994771880
SWIFT Code: CITIUS33
ABA Number: 021000089

B.    Total Amount to Enter for the Detailed Concepts in Clause 3.1 of the AGREEMENT
       US$ 300,000

C.    Total Amount to Enter for the Detailed Concepts in Clause 3.2 of the AGREEMENT

US$ 28,825,000

**II.    Banking Account of Marcelo Gebharddt, Martin Caride Meabe, Francisco Colombo and Aguirre
        Saravia & Gebhardt Abogados**

A.    Bank Data

a) Estudio Aguirre Saravia & Gebhardt SRL.

Bank: HSBC
Branch: Av. LEANDRO ALEM 105 8
CURRENT ACCOUNT In USD: 094-8-17559-0.
CBU: 15000497-00009481755900
Taxpayer ID (CUIT): 30-70958902-0

Holder: AGUIRRE SARAVIA & GEBHARDT ABOGADOS

b) Marcelo Gebhardt
Intermediary Bank: JP Morgan Chase Bank N.A.
City: New York
Swift Code: CHASUS33
ABA: 021000021
Beneficiary Bank: Banco Itaú Uruguay S.A. (headquarters)
Swift code: ITAUUYMM
End Beneficiary: Marcelo Gebhardt - Account No. 7913806

c) Francisco Colombo
Bank: HSBC
Savings Account in Dollars No. 6228064406
CBU: 15006228-00062280644064
Alias: POSTRE.MADRE.HUEVO
Taxpayer ID (CUIT): 20-32996113-4.

d) Martín Caride Meabe
Banco Galicia
Account: 4008088-8 182-2
CBU: 00701828-31004008088820
ALIAS: carucha12
Taxpayer ID (CUIT): 20-28696646-3


B.    <u>Total Amount to Enter for the Detailed Concepts in the Third Clause of the AGREEMENT</u>


US $ 2,475,000 (plus VAT, minus withholding tax) in the following amounts:

**<u>MARCELO GEBHARDT: US$ 569,250</u>**
**<u>MARTIN CARIDE MEABE: US$ 408,375</u>**
**<u>FRANCISCO COLOMBO: US$ 408,375</u>**
**<u>Estudio Aguirre Saravia & Gebhardt SRL: US$ 1,089,000</u>**

## Annex II

## ASSIGNMENT AGREEMENT
## ASSIGNMENT AGREEMENT

This Assignment Agreement (the "Assignment") is concluded between IIG TOF B.V. (represented by Trust International Management (T.I.M.) B.V.), a company incorporated and existing in accordance with the laws of the Kingdom of the Netherlands residing at Telesstone 8 - Teleport, Naritaweg 165, P.O. Box 7241, 1007 JE, Amsterdam, The Netherlands (hereinafter "IIG TOF"); Trade Finance Trust a "trust" incorporated and existing in accordance with the laws of the State of Delaware of the United States, domiciled at 1500 Broadway, 26th floor, New York, United States (hereinafter "TFT" and jointly with IIG TOF, "IIG" or the "GRANTOR"); on the one hand, and on the other SWAAS International Corporation S.A., a public limited company constituted and legally existing in accordance with the laws of Panama, domiciled at Aquilino de la Guardia 8, Panama, Panama (hereinafter, "SWAAS"). IIG and the Vicentin Group are sometimes referred to individually in this AGREEMENT as the "Party" and collectively as the "Parties".

**WHEREAS,**

**(i)**     That on September 1, 2009, Nacadie entered into a Line of Credit Agreement with IIG Capital LLC ("**IIG Capital**"), through which IIG Capital granted Nacadie a line of credit for up to an amount of twenty million US dollars (USD 20,000,000.00.-) (the "**Nacadie Line of Credit**"). That said line of credit that was amended twice, the First Amendment to the Line of Credit Contract dated December 29, 2011 and the Second Amendment to the Line of Credit Contract dated April 16, 2014;

**(ii)**     That the tenth clause of the Nacadie Credit Line expressly provides that "The LENDER may assign this Framework Contract in its entirety to any of its affiliates and/or subsidiaries (understood as those controlling companies of or controlled by the LENDER or under the same ownership of the latter) by any of the means provided for in the Law, the assignee acquiring the same benefits and / or rights and / or actions that the LENDER owns under this contract.In that case, the LENDER must communicate in an appropriate manner the assignment to the BORROWER, as well as the new payment instructions, using for this any reliable means of notification, being able in this case the BORROWER to operate to the transferee of the contract any defense that could have operated on the LENDER assignor ";

**(iii)**     That dated September 1, 2009, Nacadie (as trustee), Manfid S.A. (as trustee) and IIG Capital (as beneficiary and trustee) entered into a Guarantee Trust Agreement ("Trust

Agreement") by which Nacadie transferred the trust property of the shares representing 49% of FRIAR's capital to guarantee compliance of the obligations established in the Nacadie Credit Line and the FRIAR Credit Line. That said Trust Agreement was amended twice, the First Amendment to the Guaranty Trust Agreement dated January 7, 2011 and the Second Amendment to the Guaranty Trust Agreement dated December 29, 2011;

**(iv)**    That on December 29, 2011, IIG Capital and Nacadie entered into an Irrevocable Option for the Sale of Shares, through which IIG Capital irrevocably and exclusively granted Nacadie the right to sell 49% of the shares of FRIAR to their exclusive option and IIG Capital was forced to acquire them if Nacadie exercised such an option (subject to certain conditions), having paid the corresponding premium to that effect ("**Nacadie Option**");

**(v)**    That on April 10, 2014, IIG Capital and IIG TOF subscribed a Transfer of Rights Agreement under the terms of which IIG Capital ceded in favor of IIG TOF all of its rights under the Nacadie Line of Credit, the Trust Agreement, and the Nacadie Option to IIG TOF;

**(vi)**    That IIG TOF ceded in favor of TFT a portion of its rights under the Nacadie Line of Credit;

**(vii)**    That on the date of the IIG TOF and TFT date they have entered into a SETTLEMENT AGREEMENT (the "Settlement Agreement") with NacadieComercial S.A. (hereinafter "Nacadie"), Frigorífico Regional IndustriasAlimenticias Reconquista S.A.(hereinafter "FRIAR"); Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Uruguay Branch (hereinafter "FRIAR ROU"); Algodonera Avellaneda S.A. (hereinafter "Algodonera"), Vicentin SAIC (hereinafter "Vicentin", Vicentin SAIC Uruguay Branch (hereinafter "Vicentin ROU" and SWAAS, with the aim of putting an end to all the disputes that exist between them;

(vii) That the Assignor wishes to transfer to SWAAS all the rights, credits, and actions corresponding to it under the Nacadie Credit Line.

In virtue of the foregoing, the Parties agree to hold the following Assignment in accordance with the following clauses:

**CLAUSE I**
**ASSIGNMENT - ASSIGNED RIGHTS**

**1.1.** Assigned Rights. Subject to the payment of the PRICE, the Assignor cedes and transfers to SWAAS, irrevocably, all and each one of the rights, credits, and shares it holds under the

Nacadie Credit Line, including, but not limited to, all the rights of the Assignor to collect all sums of money for any reason under, and/or in relation to, and/or linked to the Nacadie Credit Line (the "Assigned Rights"). The Assignor states that this Assignment corresponds to one hundred percent (100%) of the rights, credits, and shares derived from the Nacadie Credit Line.

**1.2.** In this act, the Assignor delivers the corresponding contract to the Nacadie Credit Line with its addenda to SWAAS.

## CLAUSE II
### PRICE

**2.1.** The Parties set the price of the Assignment in the amount of US $ 8,573,551 (the "**PRICE**") that will be paid by SWAAS within the next 10 business days in the following account:

Citibank, N.A.
153 East 53rd Street
New York, New York 10043 USA
Account Name: Chaffetz Lindsey LLP
Account Number: 9994771880
SWIFT Code: CITIUS33
ABA Number: 021000089

**2.2.** In the event that SWAAS and/or any company of the Vicentin Group does not promptly make the payment foreseen in Clause 2.1, this agreement will be without effect in the terms provided in Clause 3.2. of the Settlement Agreement.

**2.3.** The Parties recognize that the payment of the Assignment in US dollars is essential and, consequently, SWAAS renounces invoking the provision of article 765 of the Nation's Civil and Commercial Code, declaring likewise that SWAAS is in possession of United States dollars in free availability in sufficient quantity to make the payments to which it has been obliged under this Assignment in said currency.

## CLAUSE III
### NOTIFICATION AND ACCEPTANCE OF THE ASSIGNMENT BY THE ASSIGNED DEBTOR

It will be the responsibility of SWAAS to obtain the acceptance of Nacadie to this assignment in the terms of Annex III.

## CLAUSE IV
## DECLARATIONS AND GUARANTEES

**4.1.** The Assignor declares and guarantees that:

**a)** The execution of this agreement and the performance of the acts and Settlements contemplated in it (a) will not violate any current and/or future agreement of which IIG was part (b) will not violate the social statute of IIG, and (c) ) will not violate any rule or applicable law to which IIG or any of its assets are subject, nor any statutory, assembly, or contractual provision whatsoever;

**b)** IIG is the exclusive holder of the Assigned Rights and IIG has not assigned, encumbered, transferred or in any other way affected the availability of the Assigned Rights, all of which are free of real or personal rights, or privileges in favor of third parties, and of any other lien or legal restriction, contractual or of any other nature, or impediment, and that has not been notified of any seizure or inhibition, that restricts, prevents, limits, and / or in any other way hinders or diminishes the Assignment made by virtue of this, the compliance of the Assignment and/or the full, peaceful, and effective exercise by SWAAS of any of its respective faculties, privileges, attributions, rights, titles, and/or interests under this, or that of any other way could adversely affect the rights granted to SWAAS;

**c)** Guarantees the existence and legitimacy of the Assigned Rights;

**d)** This Assignment constitutes a valid and binding obligation of IIG, legally enforceable in accordance with its terms and conditions;

**e)** No consent, authorization, approval, notification, presentation, or any other action of any person of private or public law (including, but not limited to any governmental authority) is required for the purposes of (a) the constitution, improvement, compliance and/or execution of the Assignment of the Assigned Rights, and/or (b) the exercise by SWAAS of all rights contemplated under this, with the exception of the notifications that must be made by IIG in accordance with Clause III; and

**f)** All the documents transferred by the Assigned Debtor to the Assignor or issued by the Assignor in accordance with the Nacadie Credit Line, are delivered with this Assignment by the Assignor to SWAAS.

4.2 SWAAS declares and guarantees that the Assignor will not be liable in case of insolvency of the Assigned Debtor in relation to the Nacadie Line of Credit, or in case of default or delay by the Assigned Debtor with respect to the obligations established in the Line of Credit.

## CLAUSE V
## OBLIGATIONS OF IIG

**5.1.** IIG undertakes to subscribe and deliver to SWAAS, and execute any other document, and/or to perform any other act that may be necessary to ensure and/or protect the existence, validity, enforceability, and/or effectiveness of the Assignment.

**5.2.** IIG has delivered to Nacadie in the framework of the Agreement of Settlement 1 a promissory note issued by Nacadie, for which IIG declares and guarantees that there are no more promissory notes issued on the occasion of the Nacadie Credit Line.

## CLAUSE VI
## TAXES AND TAX LIABILITIES

SWAAS will be responsible for the payment of any tax or tax liabilities which the Parties may incur as a result of the celebration of the present.

## CLAUSE VII

## APPLICABLE LAW AND ARBITRATION

All disputes arising out of or relating to this Assignment will be resolved definitively in accordance with the Arbitration Rules of the International Chamber of Commerce then in force, by three arbitrators appointed in accordance with the aforementioned regulations. The seat of the arbitration will be Montevideo (Uruguay), the language to be used in the arbitration procedure will be Spanish and the substantive law will be that of the Argentine Republic, without application of its standards of conflict of laws.

## CLAUSE VIII
## DOMICILES

**7.1.** Domiciles. For all legal purposes derived from this, the Parties constitute special domiciles in the places indicated below, where all communications, summonses, claims, interpellations, and notifications, judicial or extrajudicial, that are made will be valid and binding in reason of the present and will be denounced to the domicile of the Assigned Debtor and of the Guarantors in the following addresses:

**IIG TOF B.V.**

Telesstone 8, Teleport, Naritaweg 165, P.O. Box 7241,

1007 JE, Amsterdam,

Holland

**Trade Finance Trust**

1500 Broadway, 26th floor

NY 10036, New York

United States

**SWAAS International Corporation S.A.**

Aquilino de la Guardia 8, Panamá,

Panamá


### CLAUSE IX
### VALIDITY
This Assignment will become effective the day of its acceptance by SWAAS.


### CLAUSE X

### signatures and representatives
The Assignment may be signed in different copies and in different jurisdictions, constituting a copy signed by each of the parties.

IIG indistinctly designates Anibal Sabater, Rainbow Willard, Ricardo Barreiro and/or Juan Pablo de Luca as their representatives to receive any of the documents that must be delivered under the terms of this Assignment.

SWAAS indistinctly designates Luis María Ayarragaray and/or Esteban Daireaux and/or Manuel Martín Lanusse as their representatives to receive any of the documents that must be delivered under the terms of this Assignment.


On ____ of the month of December 2018


_____

By: **IIG TOF B.V.** (represented by Trust International Management (T.I.M.) B.V.)

33321333v16

Name:
Position:

_____
By: **Trade Finance Trust** (represented by IIG Trade Finance LLC as Administrator)
Name:
Position:

_____
By: **SWAAS International Corporation S.A.**
Name:
Position:

[ALL SIGNATURES CERTIFIED BY PUBLIC NOTARY]

**SUB-ANNEX I: NOTIFICATION NOTE TO THE ASSIGNED DEBTOR**

Buenos Aires,    February, 2019

Dear Sirs

**NacadieComercial S.A.**

Delivered by hand

**Ref.: Assignment Contract - Nacadie Credit Line**

Dear Sirs,

We are writing to you to let you know that the Credit Line Contract executed by you with IIG Capital LLC (later assigned to IIG TOF B.V.), under which Nacadie was granted a credit line for a maximum amount of twenty million dollars of the United States of America (USD 20,000,000.00.-) (the "Nacadie Credit Line"), has been assigned and transferred to SWAAS International Corporation S.A., in an irrevocable manner.

Consequently, any and all rights, credits and shares linked to the Nacadie Credit Line, including, without limitation, all the rights of the Assignor to collect and receive the sums of money for any concept by virtue of, and/or in relation to, and/or linked thereto, corresponding to one hundred per cent (100%) of the rights, credits and shares derived from the Nacadie Credit Line, are currently in the hands of SWAAS International Corporation S.A., domiciled at Aquilino de la Guardia 8, Panama, Panama.

Without further ado and sincerely,

_____

By: **IIG TOF B.V.** (represented by Trust International Management (T.I.M.) B.V.)
Name:
Title:

_____

By: **Trade Finance Trust** (represented by IIG Trade Finance LLC as Administrator)
Name:
Title:

_____

By: **SWAAS International Corporation S.A.**

Name:

Title:

**SUB-ANNEX II: ACCEPTANCE NOTE FROM THE ASSIGNED DEBTOR**

Buenos Aires,    of February 2019

Sirs.

**IIG TOF B.V.**

**Trade Finance Trust**

**SWAAS International Corporation S.A.**

<u>Present</u>,

<u>**Ref.: Assignment Agreement - Nacadie Line of Credit**</u>

To whomever it may concern:

We are pleased to contact you in order to let you know that NacadieComercial S.A. is notified and agrees with the terms of the Assignment made in favor of SWAAS International Corporation S.A., of your reference communication.

Without another particular, I greet you attentively.

_____

**NacadieComercial S.A.**

Signature:

Position:

33321333v16

## Annex III

## MODEL OF JUDICIAL WRITINGS FOR EXECUTIVE PROCEEDINGS

**FRIAR EXECUTIVE PROCEEDINGS**

## MAKE OBVIOUS - END THE JUDGMENT

Mr. Judge:

      **Marcelo Gebhardt**, in my capacity as attorney-in-fact of IIG TOF B.V., keeping the domicile established on Av. Eduardo Madero 942, Piso 13°, CABA (*Aguirre Saravia & Gebhardt Abogados*) – Zona de Notificación 448-, and the electronic address at 20329961134, with the legal sponsorship of **Drs.Alejandro D. Villaverde, Martín CarideMeabe and Francisco Colombo**, on the one hand, and on the other, **Dr. Tomás Durrieu**, in my capacity as the lawyer representing **FRIGORÍFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA (F.R.I.A.R.) S.A.** ("FRIAR") y **FRIGORÍFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA (F.R.I.A.R.) S.A., Uruguay Branch** ("FRIAR") according to the testimony opportunely added to these actions, with the legal sponsorship of **Drs.Luis M. Ayarragaray, Esteban Daireaux and Manuel M. Lanusse**, maintaining the electronic address established under the CUIT 23-24159400-9 and physical domicile at 25 de mayo N° 555, piso 1 de la Ciudad de Buenos Aires, in the proceedings entitled **"IIG TOF B.V. c/ FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. Y OTRO s/ EJECUTIVO (Expte.** 13,899 / 2017), in process before the National Court of First Instance in the Commercial No. 30, Secretariat No. 59, located in Montevideo 546, 6th, CABA, to V.S. Respectfully we say:

### 1. Make obvious

      That the parties reached a conciliatory agreement within the framework of the arbitrations "NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Uruguay

Branch, Algodonera Avellaneda S.A., Vicentin S.A.I.C, Vicentin S.A.I.C Uruguay  Branch (claimants) v. *IIG TOF B.V.* (defendant) "(Case CCI N ° 22998 / JPA) and arbitration entitled" IIG TOF B.V. *(claimants) v. NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A. UruguayBranch* (defendants) "(Case CCI N ° 23153 / JPA), the obligations of the credit agreements involved in said arbitration proceedings have been canceled and consequently the promissory notes claimed in the proceedings, issued in guarantee of said operations, have been canceled.

As a result, the claimant party has nothing more to demand from the defendants for motive or occasion of the present proceedings, for which reason it waives the action and the right.

The defendants expressly consent to the withdrawal hereby made by the claimant.

## 2.  Costs

The parties agree that the costs are assumed by the order caused. As a result, and notwithstanding any private agreements executed by the parties on the matter, each party shall be responsible for payment of the fees that for any concept could correspond to its attorneys even if there was a resolution imposing the costs on one of the parties and the payment of expenses incurred in connection with these proceedings. The claimants are responsible for paying the justice fee, which has already been paid.

Signatory attorneys, in their own right, fully agree with the distribution of the costs agreed in the preceding paragraph, desisting and waiving claims to the counterpart any fee that may correspond to them for the purposes of these proceedings and/or incidents occurred, even if cost to one of the parties had incurred.

## 3.  Lifting of precautionary measures -Conformity

The claimants and intervening attorneys agree and request the lifting of all the precautionary measures in the proceedings, with the immediate restitution of funds to the defendant.

The claimant will assist in the identification of companies and financial entities where embargoes have been placed and for the purpose of lifting them.

Given that the defendant has not had access to the incident formed for the purpose of blocking attachments on companies, the claimant party conforms so that the defendant has access to it.

In this context, the parties request that the corresponding writs of removal of the embargo and office of restitution of funds be ordered.

To this end, it is requested that the Bank of the City of Buenos Aires be free to: 1) Proceed to disregard the funds invested and, 2) Proceed to transfer the sums deposited in the proceedings account to the account in dollars No. 2-024-0002560123-1 of ownership of FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. (FRIAR) in Banco Macro, CBU  CBU 0440024-0 2000025601231-6.

### 4.  Conformance with the return

Both parties agree to the withdrawal by each of the parties of the original documentation or certified copies that it had contributed to the process as evidence.

### 5.  Final statement

Since the proceedings are hereby terminated, both parties and their attorneys declare that nothing has to be claimed (neither to them nor to their related companies and/or any of their representatives and/or directors and /or officers and/or advisors and/or attorneys and/or agents and/or commercial representatives) for any reason or occasion of the present proceedings, incidents, summons taken, and any other action related to the general controversy that has been urged, requests for the imposition of sanctions, or any other incident that might have been generated within the framework of this process were abandoned.

### 6.  Request:

For everything exposed to V.S. we request:

6.1.    The withdrawal of the action and the right made by the claimant be taken into consideration. The acceptance of the withdrawal of the action and the right of the defendant be taken into consideration.

6.2.    The agreed distribution of costs and the compliance of the lawyers involved be taken into consideration.

6.3.    The lifting of the embargoes is ordered, ordering the release of office to banks and companies where the measure had been locked.

6.4.    It is ordered that the Bank of the City of Buenos Aires be released to the effect of disaffecting the funds invested and the restitution of the same to the demand of FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. in the account indicated.

6.5.    The restitution of the original documentation and / or certified copies provided as evidence by the parties is ordered.

6.6.    The present proceedings are opportunely filed.


IF THE PETITION HEREIN IS GRANTED,

**JUSTICE SHALL BE DONE.-**

**ALGODONERA EXECUTIVE PROCEEDINGS**

<u>**MAKE OBVIOUS - END THE JUDGMENT**</u>

Mr. Judge:

**Marcelo Gebhardt**, in my capacity as attorney-in-fact of IIG TOF B.V., keeping the domicile established on Av. Eduardo Madero 942, Piso 13°, CABA (*Aguirre Saravia & Gebhardt Abogados*) **–** Zona de Notificación 448-, and the electronic address at 20329961134, with the legal sponsorship of **Drs.Alejandro D. Villaverde, Martín CarideMeabe and Francisco Colombo**, on the one hand and on the other, **Dr. Tomás Durrieu**, in my capacity as lawyer empowered by **ALGODONERA AVELLANEDA S.A.** and **VICENTIN SAIC** according to the testimony opportunely added to these proceedings, with the legal sponsorship of **Drs.Alfredo J. Fernández Quiroga, Luis M. Ayarragaray, Esteban Daireaux and Manuel M. Lanusse**, keeping the electronic address established under CUIT 23-24159400-9 and physical on May 25 No. 555, 1st floor of the City of Buenos Aires , in the proceedings entitled "**IIG TOF B.V. c/ Algodonera Avellaneda S.A. y Otro s/ Ejecutivo**", (**File 13895/2017**), in process before the National Court of First Instance in Commercial No. 31, Secretariat No. 62, located in Montevideo 546, 6th, CABA, to V.S. Respectfully we say:

    1.  **Make obvious**

That the parties reached a conciliatory agreement within the framework of the arbitrations "NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Uruguay Branch, Algodonera Avellaneda S.A., Vicentin S.A.I.C, Vicentin S.A.I.C Uruguay  Branch (claimants) v. *IIG TOF B.V.* (defendant) "(Case CCI N ° 22998 / JPA) and arbitration entitled" IIG TOF B.V. *(claimants) v. NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A. UruguayBranch* (defendants) "(Case CCI N ° 23153 / JPA), the obligations of the credit agreements involved in said arbitration proceedings have been canceled and consequently the promissory notes claimed in the proceedings, issued in guarantee of said operations, have been canceled.

As a result, the parties withdraw from continuing with the appeals process in progress. The claimant party conforms to the withdrawal of the instance of the defendants and the defendants agree to the withdrawal of the claimant's instance.

Likewise, the claimants share that they have been sufficiently disinterested with respect to the rights arising from the judgment of first instance issued in the case, for which reason they have nothing to demand from the defendants in connection with these executive proceedings or the judgment handed down in the case file.

The defendant expressly consents to the manifestation with respect to disinterest.

### 2.     Costs

The parties agree that the costs are assumed by the order caused. As a result, and notwithstanding any private agreements executed by the parties on the matter, each party shall be responsible for payment of the fees that for any concept could correspond to its attorneys even if there was a resolution imposing the costs on one of the parties and the payment of expenses incurred in connection with these proceedings. The claimants are responsible for paying the justice fee, which has already been paid.

Signatory attorneys, in their own right, fully agree with the distribution of the costs agreed in the preceding paragraph, desisting and waiving claims to the counterpart any fee that may correspond to them for the purposes of these proceedings and/or incidents occurred, even if cost to one of the parties had incurred.

### 3.     Lifting of precautionary measures - Restitution of policy

The claimants and intervening attorneys agree and request the lifting of all the precautionary measures in the proceedings.

Likewise, they grant compliance with the immediate restitution to the demands of the bond policy presented in the proceedings for its cancellation.

Finally, they agree to the lifting of any precautionary measures that were in effect to date and the return of funds to the defendants that may still be pending due to the timely embargoes.

**4.     Conformance with the return**

Both parties agree to the withdrawal by each of the parties of the original documentation or certified copies that it had contributed to the process as evidence.

**5.     Final statement**

Since the proceedings are hereby terminated, both parties and their attorneys declare that nothing has to be claimed (neither to them nor to their related companies and/or any of their representatives and/or directors and /or officers and/or advisors and/or attorneys and/or agents and/or commercial representatives) for any reason or occasion of the present proceedings, incidents, summons taken, and any other action related to the general controversy that has been urged, requests for the imposition of sanctions, or any other incident that might have been generated within the framework of this process were abandoned.

**6.     Request:**

For everything exposed to V.S. we request:

6.1.     The extinction of the main obligation expressed and consequence of the completion of the present proceedings be taken into consideration.

6.2.     The common withdrawal of the instance and the lack of interest in the rights arising from the ruling issued in the case file be taken into consideration.

6.3.     The agreed distribution of costs and the compliance of the lawyers involved be taken into consideration.

6.4.     Order the restitution to the defendants of the bond policy for its cancellation and the lifting of the precautionary measures that may be in force.

6.5.     The restitution of the original documentation and / or certified copies provided as evidence by the parties is ordered.

6.6.     The present proceedings are opportunely filed.

IF THE PETITION HEREIN IS GRANTED,

**JUSTICE SHALL BE DONE.-**

### ANNEX IV

### WRITTEN SUBMISSIONS OF THE PARTIES, DECLINING TO CHARGE FEES FROM THE COUNTERPARTY IN THE EXECUTIVE PROCEEDINGS

**EXECUTIVE TRIAL FRIAR**

### MAKE CLEAR – GRANT COMPLIANCE

Honorable Judge:

**Luis M. Ayarragaray, Esteban Daireaux, Manuel M. Lanusse and Thomas Durrieu,** all attorneys in their own right, in the files of the case entitled **"IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o EXECUTIVE (File 13.899 / 2017),** pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

That by means of this statement we have nothing to claim against the applicant party in our professional actions in these proceedings, occurrences, and/or incidents that took place during these proceedings.

Furthermore, we voice our consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

**<u>MAKE CLEAR – GRANT COMPLIANCE</u>**

Honorable Judge:

      **Rodrigo Sebastián Bustingorry,** attorney, registered in Volume 73, Page 208, CPACF, on his own behalf, in the files of the case entitled **"IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o EXECUTIVE (File 13.899 / 2017),** pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, I respectfully state the following:

      That my intent in this action is to make it clear that I have nothing to claim against either party in my professional actions in these actions.

      Therefore, I voice my consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

      TO BE PROVIDED IN ACCORDANCE,

      **JUSTICE SHALL BE DONE. -**

## MAKE CLEAR – GRANT COMPLIANCE

Honorable Judge:

      **Hector Luis Vizcay**, attorney, registered in Volume 73, Page 208, CPACF, on his own behalf, in the files of the case entitled "**IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o EXECUTIVE" (File  13.899 / 2017),** pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, I respectfully state the following:

      That my intent in this action is to make it clear that I have nothing to claim against either party in my professional actions in these actions.

      Therefore, I voice my consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

      TO BE PROVIDED IN ACCORDANCE,

      **JUSTICE SHALL BE DONE. -**

**MAKE CLEAR – GRANT COMPLIANCE**

Honorable Judge:

    **Marcelo Gebhardt**, **Alejandro D. Villaverde**, **Martín CarideMeabe** and **Francisco Colombo**, all attorneys, on their own behalf, in the files identified as "**IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o EXECUTIVE (File 13.899 / 2017),** pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

    That by means of this statement we have nothing to claim against the respondent party in our professional actions in these proceedings, occurrences, and/or incidents that took place during these proceedings.

    Therefore, we voice consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

    TO BE PROVIDED IN ACCORDANCE,

    **JUSTICE SHALL BE DONE. -**

**MAKE CLEAR – GRANT COMPLIANCE**

Honorable Judge:

**Luis M. Ayarragaray, Esteban Daireaux, Manuel M. Lanusse and Thomas Durrieu,** all attorneys in their own right, in the files of the case entitled **"INCIDENTE No. 1 IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o INHIBITING INCIDENTS" (File  13.899 / 2017/1)**, pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

That by means of this statement we have nothing to claim against the applicant party in our professional actions in these proceedings, occurrences, and/or incidents that took place during these proceedings.

Furthermore, we voice our consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

**<u>MAKE CLEAR – GRANT COMPLIANCE</u>**

Honorable Judge:

  **Marcelo Gebhardt**, **Alejandro D. Villaverde**, **Martín CarideMeabe** and **Francisco Colombo**, all attorneys, on their own behalf, in the files identified as **"INCIDENT No. 1 - IIG TOF B. V. vs. FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA S.A. ET AL w/o INHIBITING INCIDENTS" (File   13.899 / 2017/1)**, pending before the National Court of First Instance in commercial matters No. 30, Department No. 59, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

  That our intent in this action is to make it clear that we have nothing to claim against the respondents in our professional actions in these actions.

  Therefore, we voice consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

  TO BE PROVIDED IN ACCORDANCE,

  **JUSTICE SHALL BE DONE. -**

33321333v16

**MAKE CLEAR – GRANT COMPLIANCE**

Honorable Judge:

**Luis M. Ayarragaray, Alfredo Fernández Quiroga, Esteban Daireaux, Manuel M. Lanusse and Thomas Durrieu**, all attorneys in their own right, in the files of the case entitled **"IIG TOF B. V. vs. ALGODONERA AVELLANEDA ET AL W/O EXECUTIVE" (File 13.895 / 2017)**, pending before the National Court of First Instance in commercial matters No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

That by means of this statement we have nothing to claim against the applicant party in our professional actions in these proceedings, occurrences, and/or incidents that took place during these proceedings.

Furthermore, we voice our consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

**MAKE CLEAR – GRANT COMPLIANCE**

Honorable Judge:

      **Gabriel Cramer,** advocate, on his own behalf, in the files of the proceedings identified as **" IIG TOF B. V. v. Algondonera Avellaneda S.A. et al w/o Executive**", **(File 13895/2017)**, pending before the competent National Court of First Instance of Commercial Affairs No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, I respectfully state the following:

      That my intent in this action is to make it clear that I have nothing to claim against either party in my professional actions in these actions.

      Therefore, I voice my consent with the lifting of the precautionary measures, the restitution of the surety bond, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

      TO BE PROVIDED IN ACCORDANCE,

      **JUSTICE SHALL BE DONE. -**

## MAKE CLEAR – GRANT COMPLIANCE

Honorable Judge:

**Hector Luis Vizcay,** attorney, registered in Volume 73, Page 208, CPACF, on his own behalf, in the files of the case identified as:**"IIG TOF B. V. v. Algondonera Avellaneda S.A. et al w/o Executive**", **(File 13895/2017)**, pending before the competent National Court of First Instance of Commercial Affairs No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, I respectfully state the following:

That my intent in this action is to make it clear that I have nothing to claim against either party in my professional actions in these actions.

Therefore, I voice my consent with the lifting of the precautionary measures, the restitution of the surety bond, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

**<u>MAKE CLEAR – GRANT COMPLIANCE</u>**

Honorable Judge:

**Marcelo Gebhardt**, **Alejandro D. Villaverde**, **Martín CarideMeabe** and **Francisco Colombo**, all attorneys, on their own behalf, in the files identified as "**IIG TOF B. V. vs. ALGODONERA AVELLANEDA ET AL W/O EXECUTIVE" (File 13.895 / 2017)**, pending before the National Court of First Instance in commercial matters No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

That by means of this statement we have nothing to claim against the respondent party in our professional actions in these proceedings, occurrences, and/or incidents that took place during these proceedings.

Therefore, we voice consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

## MAKE CLEAR – GRANT COMPLIANCE

Honorable Judge:

**Luis M. Ayarragaray, Alfredo Fernández Quiroga, Esteban Daireaux, Manuel M. Lanusse and Thomas Durrieu**, all attorneys in their own right, in the files of the case entitled "**INCIDENT No. 1 IIG TOF B. V. vs. ALGODONERA AVELLANEDA ET AL W/O INHIBITING INCIDENT" (File 13.895/2017/1)**, pending before the National Court of First Instance in commercial matters No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

That our intent in this action is to make it clear that we have nothing to claim against the applicants in our professional actions in these actions.

Furthermore, we voice our consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

TO BE PROVIDED IN ACCORDANCE,

**JUSTICE SHALL BE DONE. -**

**<u>MAKE CLEAR – GRANT COMPLIANCE</u>**

Honorable Judge:

   **Marcelo Gebhardt**, **Alejandro D. Villaverde**, **Martín CarideMeabe**, and **Francisco Colombo**, all attorneys, on their own behalf, in the files identified as **"INCIDENT No. 1 - IIG TOF B. V. vs. ALGODONERA AVELLANEDA ET AL W/O INHIBITING INCIDENT" (File 13.895/2017/1)**, pending before the National Court of First Instance in commercial matters No. 31, Department No. 62, located at Montevideo 546, 6°, CABA (Autonomous City of Buenos Aires), to your honor, we respectfully state the following:

   That our intent in this action is to make it clear that we have nothing to claim against the respondents in our professional actions in these actions.

   Therefore, we voice consent with the lifting of the precautionary measures, the restitution of funds seized, the return of documentation, and other issues that may be required by the parties in connection with the completion of the proceedings.

   TO BE PROVIDED IN ACCORDANCE,

   **JUSTICE SHALL BE DONE. -**

## ANNEX V

## MODEL FOR THE WRITTEN NOTICES FOR THE WITHDRAWAL FROM THE ARBITRATION

XX of January 2019

**VIA E–MAIL\***

**Members of the Court**

Dr. Juan Carlos Esguerra Portocarrero Esguerra
Legal Advisors
Avenue "Calle 72" No. 6-30, 12th floor
110231, Bogotá D.C.
Colombia

Dr. José Alfredo Martínez de Hoz (h.)
Martínez de Hoz& Rueda
Torre Fortabat
Bouchard 680, 19th Floor
C1106ABJ, City of Buenos Aires
Republic of Argentina

Dr. Carlos María Rotman
BRUCHOU, FERNÁNDEZ MADERO & LOMBARDI
Engineer Enrique Bully 275, 12th floor
1001, City of Buenos Aires
Republic of Argentina

Re:*NacadieComercial S.A. et al. v. IIG TOF B.V. (Case ICC No. 22998/JPA)*

Esteemed Members of the Court,

It is our pleasure to address you on behalf of NacadieComercial S.A. ("Nacadie"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. ("FRIAR"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. Sucursal Uruguay ("FRIAR ROU"), Algodonera Avellaneda S.A. ("Algodonera"), Vicentin SAIC ("Vicentin"), and Vicentin SAIC Sucursal Uruguay ("Vicentin ROU") y IIG TOF B.V. ("IIG TOF"), referred to jointly as the Parties.

The parties wish to bring to the attention of the Court that they have reached a settlement agreement relating to the contested facts in this Arbitration, and to the claims of the parties thereto.

As such, <u>the Parties notify the court that they withdraw this arbitral application from their knowledge, and desist from all claims and applications made before the court in the context thereof</u>.

Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU e IIG TOF request that the Court establish the irrevocable termination of the Arbitration ICC 22998/JPA *"NacadieComercial SA et al. v. IIG TOF B. V.*", and proceed to set the costs of Arbitration, which shall be paid by the parties in accordance with the provisions of the agreement reached.

The Agreement, in the section thereof relating to the determination of the burden of the costs and expenses of this Arbitration, determines that each Party (i) shall bear the costs of the arbitration in the manner in which such costs have been incurred, assumed, accrued, and/or canceled as of this date; and (ii) may not request the full or partial reimbursement from the other party of a cost already incurred, assumed, accrued, and/or canceled.  If, upon settling the balance of the costs of the arbitration, the court determines that there is a surplus balance to be reimbursed to the parties, that balance shall be reimbursed to each party in the same proportion that such party contributed as advance payment of the expenses in the arbitration.  If any additional costs or expenses arise that are required to be paid by order of the International Arbitration Court of the ICC, the Applicants shall pay 50 percent of those costs or expenses, and the Respondent shall pay the remaining 50 percent.

With nothing further to add, the Applicants and the Respondent wish to recognize the work of the Tribunal throughout the proceedings, and appreciate the attention and consideration provided in this Arbitration.

Respectfully,

Esteban Daireaux
*Legal counsel of the Applicants*

by: _____
        Luis María Ayarragaray
        Manuel M. Lanusse
        Fernando A. Tupa

33321333v16

by:_____

    AníbalSabater

    Rainbow Willard

    Andreas Frischknecht

    Ricardo E. Barreiro-Deymonnaz

    Juan Pablo De Luca

    Francisco J. Muñoz

    *Legal counsel of the Respondents*

cc: Juan Pablo Argentato (counsellor of the

Secretariat of the ICC))

Amanda Jiménez Pintón (counsellor of the
Secretariat of the ICC))

XX of January 2019

**VIA E–MAIL\***

**Members of the Court**

Dr. Juan Carlos Esguerra Portocarrero Esguerra

Legal Advisors                                          Dr. Carlos María Rotman

Avenue "Calle 72" No. 6-30, 12th floor                 Bruchou, Fernández Madero & Lombardi

110231, Bogotá D.C.                                    Engineer Enrique Bully 275, 12th floor

Colombia                                               1001, City of Buenos Aires

                                                       Republic of Argentina

Dr. José Alfredo Martínez de Hoz (h.) Martínez

de Hoz& Rueda

Torre Fortabat

Bouchard 680, 19th Floor

C1106ABJ, City of Buenos Aires

Republic of Argentina

## Re: *IIG TOF B.V. v. NacadieComercial S.A. et al. (Case ICC No. 23153/JPA)*

Esteemed Members of the Court,

It is our pleasure to address you on behalf of IIG TOF B. V. ("IIG TOF"), NacadieComercial S.A. ("Nacadie"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. ("FRIAR"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. Uruguay branch, and, referred to jointly as the Parties.

The parties wish to bring to the attention of the Court that they have reached a settlement agreement relating to the contested facts in this Arbitration, and to the claims of the parties thereto. As such, the Parties notify the court that they irrevocably withdraw this arbitral application and conditional counterclaim from their knowledge, and desist from all claims and applications made before the court in the context thereof.

IIG TOF requests the Court to establish the termination of the ICC Arbitration 23153/JPA *"**IIG TOF B. V. v. NacadieComercial S.A. et al. v.**"*, and proceed to set the costs of Arbitration, which shall be paid by the parties in accordance with the provisions of the agreement reached.

The Agreement, in the section thereof relating to the determination of the burden of the costs and expenses of this Arbitration, determines that each Party (i) shall bear the costs of the arbitration in the manner in which such costs have been incurred, assumed, accrued, and/or canceled as of this date; and (ii) may not request the full or partial reimbursement from the other party of a cost already incurred, assumed, accrued, and/or canceled.  If, upon settling the balance of the costs of the arbitration, the court determines that there is a surplus balance to be reimbursed to the parties, that balance shall be reimbursed to each party in the same proportion that such party contributed as advance payment of the expenses in the arbitration.  If any additional costs or expenses arise that are required to be paid by order of the International Arbitration Court of the ICC, the Applicant shall pay 50 percent of those costs or expenses, and the Respondents shall pay the remaining 50 percent.

With nothing further to add, the Applicant and the Respondents wish to recognize the work of the Tribunal throughout the proceedings, and appreciate the attention and consideration provided in this Arbitration.

Respectfully,

by: _____          by:_____

AníbalSabater                          Luis María Ayarragaray
Rainbow Willard                        Manuel M. Lanusse
Andreas Frischknecht                   Fernando A. Tupa
*Legal counsel of the Applicant*       Esteban Daireaux
                                       Tomas Durrieu
                                       *Legal counsel of the Respondents*

cc: Juan Pablo Argentato (counsellor of the Secretariat of the ICC))

Amanda Jiménez Pintón (counsellor of the Secretariat of the ICC))

## ANNEX VI

## MODEL FOR WRITTEN NOTICES TO PRESENT IN THE CRIMINAL CHARGES

**REQUEST FOR ARCHIVING OF THE INVESTIGATION.-**

To the esteemed Prosecutor:

**HECTOR LUIS VIZCAY**, registered responsible party, C.U. LT. No. 20-183735463-, attorney of the local court, with security and registry in effect for prosecution, as the legal representation of the firms: **"FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA (F.R.I.A.R) SOCIEDAD ANONIMA"**, C.U.I.T. Not 30-50400508-5, with legal domicile at Boulevard Hipólito Irigoyen No. 298 of the city of (3560) Reconquista, Santa Fe Province, **"VICENTIN SAIC"**, C. U. I. T. No 30 50095962 9, legally domiciled at *Avenida* San Martín at the corner of 14th Street, Reconquista, Santa Fe, Argentina and **"NACADIE COMERCIAL S.A."** y **"ALGODONERA AVELLANEDA S.A."**, C.U.I.T. N ° 30 59512404 9, legally domiciled at *Avenida* San Martin at the corner of *Calle* 14, in the city of (3561) Avellaneda, province of Santa Fe, with legal representation by the Drs. Andres Santos IndalecioGhio and Andres Atilio Ramseyer, attorneys of the legal forum with current registration; with legal domicile currently constituted at *Calle*GobernadorIturraspe No. 560 of the city of Reconquista, province of Santa Fe, in the C. U. I. J. indicated as:**" FRIAR SA y OTROS s/ COMPLAINT"**, no. 21-06726504-9, to the esteemed Prosecutor, I state:

That, having reached a compromise and Settlemental agreement between the complainants and respondents, in which both parties have reconciled their conflicting interests, we wish to inform the distinguished Prosecutor in charge of the Prosecution of such circumstances.

That the commercial agreement reached by the parties is with regard to a commercial matter.-

That the complainants notify the distinguished Prosecutor in charge of the Prosecution that they hereby desist from the role of plaintiffs.-

That, as the distinguished Prosecutor is aware, the commission of a crime of an economic nature has been charged, and the claims between the parties have thus been reconciled and agreement referenced the interests thereof contemplated; it may be noted, as Dr. Erbetta has done on several occasions during congresses and implementation sessions of the new adversarial accusatory penal system; "in cases where there is no conflict between parties, there should be no Judge".-

That, by virtue of said compromise agreement, and on the basis of art. 19, point 5 of the CPC of the province of Santa Fey, given that the procedural state of the CUIJ authorizes it in accordance with art. 23 of the C.P.C.; I wish to request that the Prosecutor simply file the present proceedings.-

To be provided in accordance, JUSTICE SHALL BE DONE.-

## ANNEX VII

## MODEL FOR WRITTEN NOTICES TO PRESENT IN THE CRIMINAL INHIBITION

# DESIST

Honorable judge:

**Roberto Raúl Daray**and **Luciano MunillaTerzy,** attorneys, respectively registered in volume 26, sheet 287 of the registry of the Supreme Court of Justice of the nation, and volume 87, sheet 284 of the registry of the Public Bar Association of the Federal Capital, maintaining the domicile constituted in the file of the proceedings, in our capacity as defenders of Messrs. **Jasper Otto Johan Van Rossum** and **Gershon Becher**, we appear in case No. **22.575/2018** before your honor and respectfully state that:

As the companies "Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) Sociedad Anónima", "Algodonera Avellaneda S.A.", "Vicentin S.A.I.C." y "Nacadie S.A." have desisted from their role as complainants within the framework of CUIJ 21-07626504-9 "FRIAR S.A. et al w/o its denunciation" of the register of the Office of Judicial Management of the Judicial District no. 4 of Reconquista, Santa Fe, and of the Reconquista Prosecutorial Unit of the Public Prosecutor's Office of Santa Fe, carried out against our clients, the defendants, and the filing of such criminal proceedings having been requested in light of art. 19, point 5, of the Code of Criminal Procedure of that jurisdiction, given the fact that the parties involved have reached a conciliation and compromise agreement in which the conflicting interests have been reconciled, we have come to desist from the present inhibitory framework.

In consideration of the above,

# THIS IS JUST

## ANNEX VIII

## RESOLUTION AGREEMENT AND CANCELLATION OF THE TRUST CONTRACT

## CONTRACT FOR TERMINATION AND CANCELLATION OF THE TRUST CONTRACT

This contract is concluded between,

**NacadieComercial S.A,** ("Nacadie"), a company incorporated and currently in effect under the laws of the Oriental Republic of Uruguay, with registered address at Route 8, Km 17.500, Zonamerica Business and Technology Park, Building 200, Office 2008-10, Montevideo, Oriental Republic of Uruguay, in the capacity of **GRANTOR** under the terms of Art. 1666 et seq. Civil and Commercial Code of the Nation, law 26.994 (Argentina);

**ITC Fiduciary SA –ex Manfid SA**- ("ITC"), with domicile at HipólitoYrigoyen 476, 6th floor, of the Autonomous City of Buenos Aires, Republic of Argentina, acting exclusively as **TRUSTEE** and not individually, under the terms of Art. 1666 et seq. of the Civil and Commercial Code of the Nation, law 26.994 (Argentina); and

**IIG TOF B.V.** ("IIG TOF"), represented by Trust International Management (T. I. M.) B. V., a company incorporated and in effect under the laws of the Kingdom of the Netherlands with registered office at Telesstone 8 – Teleport, Naritaweg 165, P. O. Box 7241, 1007 JE, Amsterdam, Netherlands, in the capacity of **BENEFICIARY** under the terms of Art. 1666 et seq. of the Civil and Commercial Code of the Nation, law 26.994 (Argentina).

The GRANTOR, the TRUSTEE, and the BENEFICIARY shall be referred to jointly as the **PARTIES**.

**WHEREAS:**

**(viii)**    On September 1, 2009, Nacadie entered into a Contract for a Line of Credit with IIG Capital LLC ("**IIG Capital**"), through which IIG Capital granted Nacadie a line of credit for an amount up to twenty million US dollars (USD 20,000,000.00.- ) (the "**Nacadie credit line**"). Said line of credit was amended on two occasions by the First Amendment to the Contract for the Line of Credit dated December 29, 2011 and by the Second Amendment to the Contract for the Line of Credit dated April 16, 2014;

**(ix)**    On September 1, 2009 Frigorífico Regional IndustriasAlimenticias Reconquista S.A. ("**FRIAR**") and Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Uruguay Branch ("**FRIAR Uruguay**")  entered into a Contract for a Line of Credit with IIG Capital, through which IIG Capital granted to FRIAR Uruguay a line of credit for an amount up to thirty five million US dollars (USD 35,000,000.00.-) (the "**FRIAR Line of Credit**") and FRIAR was established as a guarantor thereof. Said line of credit, which was amended six times by the First Amendment to the Contract for the Line of Credit, dated October 29, 2010; by the Second Amendment to the Contract for the Line of Credit, dated January 7, 2011; by the Third Amendment to the Contract for the Line of Credit dated March 31, 2011; by the Fifth Amendment to the Contract for the Line of Credit, dated December 29, 2011; by the Sixth Amendment to the Contract for the Line of Credit, dated November 6, 2012, and by the Seventh Amendment to the Contract for the Line of Credit, dated April 16, 2014;

**(x)**    On September 1, 2009, Nacadie, as GRANTOR, ITC (under its previous name, Manfid SA) as TRUSTEE, and IIG TOF as BENEFICIARY, entered into a Trust Contract in Guarantee (the "**TRUST CONTRACT**"), by means of which Nacadie assigned and transferred the fiduciary ownership of 588.000 nominative  non endorsable shares of a nominal value of $100 each of the company FRIAR and its accessories to the TRUSTEE, for the benefit of the BENEFICIARY, with the purpose of ensuring the fulfillment of the obligations arising from the Nacadie Line of Credit and the FRIAR Line of credit.

**(xi)**    Said TRUST CONTRACT was amended in two cases by the First Addendum of the Trust Contract in Guarantee, dated January 7, 2011 and by the Second Amendment to the Trust Contract in Guarantee, dated December 29, 2011, in which the obligation on the part of Nacadie to pay the Price of the Option to IIG Capital was included.

**(xii)**    On 29 December 2011, IIG Capital and Nacadie entered into an irrevocable option for the sale of shares, by which IIG Capital irrevocably and exclusively granted Nacadie the right to sell 49% of FRIAR's shares to its exclusive option, and IIG Capital was obliged to acquire them if Nacadie exercised that option, having paid the premium corresponding to that effect (the "**Nacadie option**"). Said Option Nacadie was amended by the First Amendment to the Irrevocable Option of the Sale of Shares dated April 16, 2014, the terms of which provided for a reduction to 44.79% of the percentage of FRIAR Shares subject to the Nacadie Option;

**(xiii)**    On April 10, 2014, IIG Capital and IIG TOF signed a Contract for the assignment of rights, under the terms of which IIG Capital assigned to IIG TOF all of its rights under the Nacadie Line of Credit, the FRIAR Line of Credit, and the Trust Contract, to IIG TOF;

**(xiv)**   That on the date of today, IIG TOF and TFT have entered into a SETTLEMENT AGREEMENT with NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A.; Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Uruguay Branch; Algodonera Avellaneda S.A., Vicentin SAIC, and VICENTIN SAIC Uruguay Branch, for the purpose of ending all disputes that exist between them;

**(xv)**   Under the provisions of the SETTLEMENT AGREEMENT, it is the intent of the Parties to cancel the provisions of the TRUST AGREEMENT, and by consequence, to determine that the Shares of FRIAR and Accessories subject to the aforementioned TRUST CONTRACT, shall be returned to the possession of the GRANTOR.

By virtue of the above, the GRANTOR, the TRUSTEE, and the BENEFICIARY agree to enter into the following Termination Contract (hereinafter the "**TERMINATION CONTRACT**") in accordance with the following terms and conditions:

**FIRST**
**DEFINITIONS**

With the exception of any terms expressly modified by this TERMINATION CONTRACT, all other terms of the TRUST CONTRACT and its amendments remain unchanged, retaining their meaning as given in Chapter 1 of the TRUST CONTRACT and/or with the modifications thereof in the subsequent amendments.

**SECOND**
**PURPOSE**

**2.1.** By means of this legal instrument, the Parties, by common agreement, deem the TRUST CONTRACT that bound them to be terminated, effective as of this date, leaving without effect the provisions, obligations, and rights arising therefrom.

**2.2.** The Parties agree that as of this date, in accordance with Clause 11.01 of the TRUST CONTRACT, all of the Goods of the Trust shall be released from the Trust. Accordingly, the parties agree to release the shares corresponding to 588,000 non-endorsable nominal shares of a nominal value $100 each of the company FRIAR.

**2.3.** In this same act, the TRUSTEE hereby assigns and transfers the full ownership of the Shares to the GRANTOR, who accepts such ownership, with the BENEFICIARY granting its express consent to such action.

**2.4.** The BENEFICIARY accepts and declares that, in this same act, it shall cease to obtain the benefits provided for it to receive under the TRUST CONTRACT.

### THIRD
### GOODS OF THE TRUST

**3.1.** In this act, and by express agreement of the Parties, the TRUSTEE shall perform the following acts:

**a)** Deliver to the GRANTOR the original stock certificates corresponding to the Shares detailed in Annex V of the TRUST CONTRACT;

**b)** Communicate to the board of directors of the Company, as provided for by the article 215 of Law No. 19.550, the transfer and assignment of the Shares to the GRANTOR, requiring their registration in the corresponding Share Registry Book

With this document serving as formal receipt and record of the delivery of the documents detailed in this clause.

**3.2.** Similarly, in this act, FRIAR shall perform the following acts:

**a)** Give acknowledgment of the communication received from the GRANTOR, under the terms of article 215 of Law 19.550, by means of an action of the board of directors; and

**b)** Proceed to make the corresponding entry in the Share Registry Book of FRIAR.

### FOURTH
### DECLARATIONS AND GUARANTEES

**4.1.** The GRANTOR declares and guarantees that:

**a)** It has duly received the Shares covered by the TRUST CONTRACT;

**b)** It maintains the obligations of indemnity toward the TRUSTEE arising from chapters eight and nine of the TRUST CONTRACTS;

**c)** It declares and guarantees that it has no further claims against the TRUSTEE by virtue of the TRUST CONTRACT;

**d)** It is obligated to provide for the expenses and costs arising from the liquidation of the TRUST; and

**e)** It has the capacity, and all the powers and authorizations necessary to conclude this TERMINATION CONTRACT and to carry out the acts referred to herein.

**4.2.** The TRUSTEE declares and guarantees that:

**a)** It has duly carried out all its obligations under the TRUST CONTRACT as of this date;

**b)** It has returned to the GRANTOR the full ownership of the entirety of the Shares subject of the TRUST CONTRACT;

**c)** It has duly received the payment of the fees provided for in Chapter 10 of the TRUST AGREEMENT, declaring that it has no further claims to make against the GRANTOR and/or BENEFICIARY in this regard; and

**d)** It has the capacity, and all the powers and authorizations necessary to conclude this TERMINATION CONTRACT and to carry out the acts referred to herein.

**4.3.** The BENEFICIARY:

**a)** Gives its express consent to the transfer of the Shares and Accessories subject to the TRUST CONTRACT to the GRANTOR;

**b)** Waives the benefits provided to it in the TRUST AGREEMENT;

**c)** Declares and guarantees that it has no further claims against the TRUSTEE by virtue of the TRUST CONTRACT;

**d)** It has the capacity, and all the powers and authorizations necessary to conclude this TERMINATION CONTRACT and to carry out the acts referred to herein.

**FIFTH**

**APPLICABLE LAW AND ARBITRATION**

All disputes that arise from of this CONTRACT OF TERMINATION or in connection with it shall be resolved definitively in accordance with the Rules of Arbitration of the International Chamber of Commerce in force at the time by three arbitrators appointed in accordance with the above-mentioned rules. The location of the arbitration shall be Montevideo (Uruguay), the language to be used in the arbitration proceedings shall be Spanish, and the substantive law shall be that of the Republic of Argentina, without application of its regulations on the conflict between laws.

* * *

**SIXTH**

**SIGNATURE AND REPRESENTATIVES**

This contract may be signed in separate copies and in separate jurisdictions, with said contract being comprised of a copy signed by each of the parties.

IIG TOF designates Anibal Sabater and/or Rainbow Willard, interchangeably, as its representatives to receive any of the documents to be delivered under the terms hereof.

Nacadie designates Luis María Ayarragaray and/or Esteban Daireaux and/or Manuel Martín Lanusse, interchangeably, as its representatives, to receive any of the documents to be delivered under the terms hereof.

AS PROOF OF CONFORMITY, on [ ____ ] of the month of December, 2018, three (3) copies of the same wording and with one sole effect have been signed.


_____

By:**NacadieComercial S.A.**

Name:

Title:


_____

By: **ITC Fiduciaria S.A.**

Name:

Title:


_____

By: **IIG TOF B.V.** (represented by Trust International Management (T. I. M.) B. V.)

Name:

Title:


[ALL SIGNATURES CERTIFIED BY A NOTARY PUBLIC]

(Model of a communication addressed to the board of directors of the Company in accordance with the terms of article 215 of Law No. 19.550 of Commercial Companies, reporting the transfer and assignment of the Shares in accordance with the provisions of Chapter 2 of the TRUST AGREEMENT in favor of NacadieComercial S.A.)

*IRREVOCABLE INSTRUCTION*

_____,_____of___2019

*Honorable*
*Chairman of the Board of Directors of*
*"Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A."*
*Present*

In our consideration:

We write to you to inform you that on the date of _____of___, 2019 ITC Fiduciaria SA (ex Manfid SA) has carried out the transfer to Nacadie Commercial SA of the amount of 588,000 (five hundred and eighty-eight thousand) registered non-endorsable shares of a nominal value of one hundred (100) pesos each share, and granting the right to one (1) vote per share, representing forty-nine percent (49.00%) of the share capital and votes of "FRIAR SA".

By consequence we request that you duly and irrevocably proceed to note in the Registry of Shareholders of "F. R. I. A. R. S.A." at the same time that titles 200,001 to 788,000, representing 588, 000 shares, proceed to be registered in the name of NacadieComercial SA; who must carry out the delivery thereof.

There being no further matters to discuss, our kindest regards to you.

## ACTION OF THE BOARD OF DIRECTORS NO.  :

In the city of Reconquista, Department of General  Obligado, Province of Santa Fe, on the XX day of the month of November, 2018, in the headquarters of "FRIGORIFICO REGIONAL INDUSTRIAS ALIMENTICIAS RECONQUISTA (F.R.I.A.R.) SOCIEDAD ANÓNIMA", located at Boulevard Hipólito Irigoyen No. 298, of this city, at 8:00 p.m., the regular members of the Board of Directors and the Trustee-holder convene for the purpose of signing this document. In view of the existence of a sufficient quorum of both bodies, the meeting begins, for the purpose of considering the following Agenda of the Day: "**Receipt of Notification with Irrevocable Instruction**".----------------------------------------------------------------------------------------------

The session having started, the honorable Chairman, Mr. Sergio Manuel Nardelli, takes the floor, who notes that the previous XX of November of 2018, a communication was received, by which it informed the company that, on the date of the XX of November 2018, ITC Trust SA (ex Manfid SA) has proceeded to transfer to NacadieComercial S.A. the amount of 588,000 (five hundred and eighty-eight thousand) registered  non-endorsable shares with a nominal value of one hundred (100) pesos per each share, and granting the right to one (1) vote per share, representing forty-nine percent (49.00%) of the share capital and the votes of "FRIAR S.A.". The aforementioned communication requests, in an irrevocable manner, to proceed to take due note in the Registry of Shareholders of "FRIAR S.A." and register titles 200,001 to 788,000, representing 588,000 shares, in the name of Nacadie Commercial SA, which is then requested to deliver said shares. ---------------------------------------------------------------------------------------------------------------

By consequence, it is decided to take due note of the cancellation of the Trust Contract under which the shares Nos. 200,001 to 788,000 were affected, and consequently, to issue the corresponding        titles        without        the        annotation        of        the        shares. ---------------------------------------------------------------------------------------------------------------

There being no further points to discuss, the meeting is adjourned at 8:30 p.m.-----------------------

## ANNEX IX

## LEGAL OPINION OF CURTIS

CURTIS, MALLET-PREVOST, COLT & MOSLE ABOGADOS

Buenos Aires, [*] March, 2019

IIG TOF
**IG TOF B.V.**
**TRADE FINANCE TRUST**
By hand.

Dear Sirs,

We are writing to you upon request of **Vicentin SAIC**, **Vicentin SAIC Sucursal Uruguay**, **Algodonera Avellaneda S.A.**, **Nacadie Comercial S.A.**, **Frigorífico Regional Industrias Alimenticias Reconquista S.A.**, **Frigorífico Regional IndustriasAlimenticias Reconquista Sucursal Uruguay** (jointly hereinafter referred to as "**Vicentin Group**") in relation to the Settlement Agreement executed between Grupo Vicentin, and IIG TOF B.V. and Trade Finance Trust (hereinafter jointly referred to as "**IIG**") and SWAAS International Corporation S.A., on this date (hereinafter, the "**Agreement**").

This letter of opinion is prepared in compliance with the provisions in clause 11.1 of this **Agreement**.

In our opinion:

(a)    Vicentin SAIC is a commercial, industrial corporation (sociedad anónima), legally created and existing pursuant to the laws of the Argentine Republic, domiciled at Calle 14 No. 495, Reconquista, Santa Fe, Argentine Republic; Vicentin SAIC Sucursal Uruguay, is a company legally created and existing pursuant to the laws the Oriental Republic of Uruguay, domiciled at Dr. Luis Bonavita 1294 office 412, WTC Free Zone, Montevideo, Oriental Republic of Uruguay; Algodonera Avellaneda S.A., is a corporation (sociedad anónima), legally created and existing pursuant to the laws of the Argentine Republic, domiciled at Av. San Martín, Esquina Calle 14, Reconquista, Santa Fe, Argentine Republic; Nacadie

ComercialS.A., is a company legally created and existing pursuant to the laws of the Oriental Republic of Uruguay, domiciled at Ruta 8 Km 17.500, Zonamerica Business and Technology Park, Building 200 Office 2008-10, Montevideo, Oriental Republic of Uruguay; Frigorífico Regional Industrias Alimenticias Reconquista S.A. is a corporation (sociedad anónima) legally created and existing pursuant to the laws of the Argentine Republic, domiciled at Boulevard Hipólito Irigoyen 298, Reconquista, Santa Fe, Argentine Republic; Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay is a branch of Frigorífico Regional Industrias Alimenticias Reconquista S.A., pursuant to the laws of the Oriental Republic of Uruguay, domiciled at Dr Luis Bonavita 1294 office 411, WTC Free Zone, Montevideo, Oriental Republic of Uruguay.

(b)  Vicentin Group has full legal capacity to undertake the obligations referred to in the **Agreement**, which are legally valid and binding for Vicentin Group and enforceable pursuant to the terms thereof.

(c)  The Agreement has been duly authorized, executed and formalized by Vicentin Group, and it constitutes a valid and binding obligation of Vicentin Group, enforceable against Vicentin Group pursuant to its terms.

(d)  The execution of the **Agreement** and the execution of the totality of obligations of Vicentin Group resulting therefrom have been duly authorized by the pertinent corporate bodies and (i) do not violate, contravene and are not in conflict with any provision in the bylaws of the companies comprising Vicentin Group; and (ii) do not violate any applicable law to Vicentin Group.

(e)  No approvals, authorizations, licenses, consents or records (different from the ones already obtained) are required for Vicentin Group to be able to do the Settlements under the **Agreement**.

Yours sincerely,

## ANNEX X

**Legal Opinion Connolly Gallagher LLP DRAFT**

January        , 2019

The addressees identified on Schedule A hereto

RE: Settlement Agreement

Ladies and Gentlemen:

We have acted as special counsel with respect to the laws of the State of Delaware and, solely for purposes of the opinion stated in paragraph 4 below, certain laws of the United States to Trade Finance Trust, a Delaware statutory trust (the "Trust"), in connection with the [Settlement Agreement, dated as of December ___, 2018, by and among the Trust and _____] (the "Settlement Agreement").

In rendering the opinions stated herein, we have examined and relied upon the following:

(a)      a copy of the Settlement Agreement executed by the Trust, together with a certified English language translation of the same;

(b)      a copy of the Certificate of Trust of the Trust certified by the Secretary of State of the State of Delaware as of December 14, 2018;

(c)      a copy of the Trust Agreement of the Trust, dated as of October 14, 2015, between Maples Fiduciary Services (Delaware), Inc., as beneficial owner, IIG Trade Finance LLC, as administrator, and Deutsche Bank Trust Company Delaware, as Delaware resident trustee;

(d)      a copy of the Amendment to Trust Agreement of the Trust, dated as of January 22, 2016, by IIG Trade Finance LLC, as administrator, and acknowledged by Maples Fiduciary Services (Delaware), Inc., as beneficial owner, and Deutsche Bank Trust Company Delaware, as Delaware resident trustee;

(e)      a copy of the Administration Agreement, dated as of February 3, 2016, by and between IIG Trade Finance LLC and the Trust; and

(f)      a copy of a certificate, dated December 14, 2018, and a bringdown verification thereof dated the date hereof, from the Secretary of State of the State of Delaware with respect to the Trust's existence and good standing in the State of Delaware (the "Delaware Certificate").

The documents referenced in the foregoing clauses (b), (c) and (d) are hereinafter collectively referred to as the "Governing Documents".

In rendering the opinions stated herein, we have relied, with your consent, only upon examination of the documents described above, and we have made no independent verification or investigation of the factual matters set forth therein.

For purposes of this opinion letter, we have not reviewed any documents other than the documents listed above. In particular, we have not reviewed any document that is referred to in or incorporated by reference into any document reviewed by us.  We have conducted no independent factual investigation of our own but rather have relied solely upon the foregoing documents, and the statements and information set forth therein, all of which we have assumed to be true, complete and accurate in all material respects.

In our examination, we have assumed the genuineness of all signatures including endorsements and conformed signatures, the legal capacity and competency of all natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as facsimile, electronic, certified or photostatic copies, the authenticity of the originals of such copies, and the accuracy of the English language translation of the Settlement Agreement.

This opinion letter is limited to (i) the laws of the State of Delaware (excluding the securities and blue sky laws of the State of Delaware), (ii) the Delaware Statutory Trust Act, 12 Del. C. §§ 3801 et seq. (the "DSTA"), and (iii) solely for purposes of the opinion stated in paragraph 4 below, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 201-208 (the "FAA").  We have not considered and express no opinion on the laws of any other jurisdiction, including federal laws of the United States other than the New York Convention and the FAA.

Based upon the foregoing and subject to the limitations, qualifications, exceptions and assumptions stated herein, we are of the opinion that:

1.      Based solely on the Delaware Certificate, the Trust is duly formed and is validly existing and in good standing as a statutory trust under the DSTA.

2.      The Trust has the power and authority under the DSTA and the Governing Documents to execute and deliver the Settlement Agreement and to perform its obligations thereunder.

3.      The Settlement Agreement has been duly authorized by all requisite action on the part of the Trust under the DSTA and the Governing Documents.

4.      Except to the extent that an exception set forth in the New York Convention and/or the FAA applies, an arbitral award made in Uruguay by an arbitral tribunal in accordance with the requirements of Clause Fourteen of the Settlement Agreement will be recognized and enforced under the New York Convention and the FAA to the extent that the arbitration relates to contract claims arising under the Settlement Agreement, if a proceeding to enforce the award is properly brought in a United States federal court having jurisdiction over the parties within three years after the arbitral award is made.

5.      Theexecution and delivery of the Settlement Agreement by the Trust, and the consummation by the Trust of the Settlements contemplated thereby and compliance by the Trust

with the terms and conditions thereof (i) do not violate, contravene or conflict with any provision of the Governing Documents, and (ii) do not violate any provision of the laws of the State of Delaware.

6.      No approvals, authorizations, licenses, consents or registrations (other than those which have been obtained) are necessary under Delaware law to enable the Trust to enter into and perform the Settlements contemplated by the Settlement Agreement.

The opinions stated herein are subject to each of the following qualifications, assumptions and limitations:

[(a)](#) The opinions stated herein are limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer, preference and other similar laws affecting creditors' rights generally, and by general principles of equity (regardless of whether enforcement is sought in equity or at law).

[(b)](#) Except to the extent expressly stated in the opinions contained herein with respect to the Trust, we have assumed that IIG Trade Finance LLC and each party to the Settlement Agreement (i) has been duly incorporated or formed and is validly existing and in good standing under the laws of its jurisdiction of incorporation or formation, (ii) has the power and authority to execute, deliver and perform all its obligations under the Settlement Agreement under the laws of its jurisdiction of incorporation or formation, and (iii) has duly authorized, executed and delivered the Settlement Agreement by all requisite action under the laws of its incorporation or formation.

[(c)](#) We call to your attention that the Settlement Agreement is governed by laws other than those with respect to which we express our opinion, and we have not consulted attorneys admitted in any other jurisdiction; the opinions stated herein are based solely upon our understanding of the plain meaning of the language contained in the Settlement Agreement, and we do not assume any responsibility for any interpretation thereof inconsistent with such understanding.

[(d)](#) We have assumed that the choice of the law of Argentina in the Settlement Agreement is valid and that the Settlement Agreement and each of its provisions are valid, binding and enforceable against each party to the Settlement Agreement under the law of Argentina and of any other jurisdiction whose law applies.

[(e)](#) This opinion letter is rendered as of the date hereof and we undertake no duty or obligation to update our opinions.

[(f)](#) This opinion letter shall be interpreted in accordance with the customary practice of United States lawyers who regularly give, and lawyers who regularly advise recipients regarding, opinions of the kind included in this opinion letter.

This opinion letter is being furnished only to you in connection with the Settlement Agreement, is solely for your benefit and is not to be used, circulated, quoted or otherwise referred to for any other purpose or relied upon by any other person or entity for any purpose without our prior written consent.

Very truly yours,

## SCHEDULE A

[List of Addressees for Opinion Letter Dated January          , 2019]

**NacadieComercial S.A.**
Ruta 8 Km 17.500, Zonamerica Business and Technology Park
Edificio 200, Oficina 2008-10
91600 Montevideo
Montevideo, Uruguay

**Frigorífico Regional Industrias Alimenticias Reconquista S.A.**
Boulevard Hipólito Yrigoyen 298
S3560 Reconquista, Santa Fe, Argentina

**Frigorífico Regional Industrias Alimenticias Reconquista S.A., Sucursal Uruguay**
Dr Luis Bonavita 1294
Oficina 411, WTC Free Zone,
11300 Montevideo, Uruguay

**Algodonera Avellaneda S.A.**
Avenida San Martín, Esquina Calle 14
Reconquista, Santa Fe, Argentina

**SWAAS International Corporation S.A.**
Calle Aquilino de la Guardia 8,
Panama City, Panama

**Vicentin S.A.I.C.**
Avenida San Martín, Esquina Calle 14
Reconquista, Santa Fe, Argentina

**Vicentin S.A.I.C., Sucursal Uruguay**
Dr Luis Bonavita 1294
Oficina 412 WTC Free Zone
11300, Montevideo, Uruguay

**Legal Opinion Blenheim DRAFT**

**___of January, 2019**

Dear Sirs,

We are giving this opinion to you at the request of IIG TOF B.V., with its registered office at [_____] ("**IIG**") with respect to the Settlement Agreement  ("**Settlement Agreement**") dated as of today by and among IIG TOF B.V., Trade Finance Trust, NacadieComercial S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A., Frigorífico Regional IndustriasAlimenticias Reconquista S.A. Sucursal Uruguay, Algodonera Avellaneda S.A., SWAAS INTERNATIONAL CORPORATION and Vicentin S.A.I.C. Sucursal Uruguay ("**Addressees**").

**I.        Scope of the legal opinion and examined documents**

Blenheim has acted as legal counsel under Dutch law to IIG, in connection with your request for this Opinion Letter. Blenheim has been requested to issue the underlying Opinion Letter to the Addressees, in order to confirm that:

(a)       IIG is a Dutch private limited (*beslotenvennootschap*) validly existing under the laws of the Netherlands;

(b)       IIG has the requisite corporate power and authority to enter into the Settlement Agreement and perform the obligations thereunder;

(c)    Signature of the Settlement Agreement on behalf of IIG by Messrs. [_____] on behalf of IIG, comprises IIG validly entering into the Settlement Agreement;

(d)       the Settlement Agreement as signed by IIG constitutes valid and binding obligations of IIG, enforceable against IIG in accordance with its terms

(e)       The Settlement Agreement does not conflict with any provision of the governing documents of IIG reviewed by us or mandatory Dutch law applicable to IIG and no government approvals, authorizations, licenses, consents or registrations (other than those which have been obtained) are necessary to enable IIG to enter into and perform the Settlements contemplated by the Settlement Agreement.

In rendering the opinions expressed herein, we have exclusively taken into account the following (copies of) documents and certificates ("**Documents**"):

- the deed of incorporation of IIG (**Annex 1**)

- the articles of association (*statuten*) of IIG (**Annex 2**);

- the registration of IIG in the trade register of the Chamber of Commerce  as per the date hereof (**Annex 3**);

- the shareholders register of IIG (**Annex 4**).

- the written resolution of the board of directors (*bestuur*) of IIG (the "**Board of Directors**") of [_____] (**Annex 5**);

- the written resolution of general meeting of shareholders ("**Shareholders Resolution**") of [_____] (**Annex 6**);

-  the registration of the legal entities comprising the Board of Directors of IIG in the trade register of the Chamber of Commerce (**Annex 7**) as per the date hereof;

- the Settlement Agreement signed by all parties thereto dated [_____] (**Annex 8**)

## II.    Limitations

This Opinion Letter is addressed solely to the Addressees. It may only be relied upon by the Addressees. The opinion contemplated herein is strictly limited to the matters stated in it and may not be read as extending by implication to any matters not specifically referred to.

The section headings used in the Opinion Letter are for convenience or reference only and are not to affect its construction or to be taken into consideration in its interpretation. Nothing in this Opinion Letter should be taken as expressing an opinion in respect to any representations or warranties, or other information, contained in any document reviewed in connection to this Opinion Letter, except if and when such is expressly confirmed in this Opinion Letter. Its contents may not be quoted or otherwise included, or even summarized or referred to in any publication or document, or disclosed to any other party, in whole or in part, for any purpose, without the prior written consent of Blenheim. A copy may, however, be provided to (i) your auditors and any governmental entity having regulatory or supervisory authority over you, (ii) your legal counsel, (iii) as required by applicable law or legal process.

We have assumed that the Settlement Agreement will be entered into for *bona fide* commercial reasons. We have not investigated or verified any factual matter disclosed to us in the course of our review.

We particularly note that we have not been involved in advising, structuring, drafting, assessing or negotiating the Settlement Agreement. We have been provided with the Settlement Agreement, which documents are not governed by the laws of The Netherlands. Our involvement is strictly limited to the opinions provided under IV.

This Opinion Letter sets out our opinions on certain matters of Dutch law as of today's date, and the opinions and statements expressed in this Opinion Letter are limited in all respects to and are to be construed and interpreted in accordance with Dutch law only.

Unless otherwise specifically stated herein, and only to the extent not qualifying as Dutch law, we do not express any opinion on public international law or on any rules under or by any treaty or treaty organization.

We do not express any opinion on Dutch or European competition law or tax law.

Furthermore, we assume not to be held to revise, update or amend this Opinion Letter in connection with (or to notify or inform you of) any developments and/or changes under Dutch law, subsequent to today's date.

This Opinion Letter may only be relied upon under the condition that the Addressees acknowledge (1) that the legal relationship between Addressees and Blenheim is governed by the laws of the Netherlands and (2) that the general terms and conditions of Blenheim (**Annex 9**) shall apply, which contain a limitation of our liability, to the amount as is paid out in the matter concerned under Blenheim's professional liability insurance. Any issues of interpretation or liability arising out of or in connection with this Opinion Letter are submitted to the exclusive jurisdiction of the competent courts of Amsterdam, the Netherlands.

In this Opinion Letter, legal concepts are expressed in English terms. The Dutch legal concepts concerned may not be identical in meaning to the concepts described by the English terms, as they may exist under the laws of other jurisdictions. In the event of a conflict or inconsistency, the relevant expression shall be deemed to refer only to the Dutch legal concepts described by the English terms.

## III.      Assumptions

For the purposes of the Opinion Letter, Blenheim has assumed that:

1. all documents reviewed by us as fax, photo or electronic copies or originals are in conformity with the executed or to be executed originals of the draft document(s) concerned, and such originals are complete and authentic, and the signatures thereon

are the genuine signatures of the persons purporting to have signed the document concerned;

2.  the Company (i) has not been dissolved, (ii) did not cease to exist pursuant to a merger or a division (iii) has not had its assets placed under administration, (iv) has not been declared bankrupt, granted a moratorium of payments, and (v) has not been made subject to similar insolvency proceedings in other jurisdictions;

3.  Our inquiries of today over the internet with the public registry of insolvencies in the Netherlands[1], (ii) the online EU insolvency register[2] and (iii) the Amsterdam court bankruptcy office by telephone (+31(0)20-5413378) also support this assumption. However, this information does not constitute conclusive evidence that the events set out in items (i) through (v) under 2. above have not occurred;

4.  the persons having signed the Shareholders Resolution and the Board of Directors Resolution had legal capacity to act in respect of the same and they have neither been dismissed, nor resigned from their respective positions at the time of signing the Shareholders Resolution and the Board of Directors Resolution;

5.  the Board of the Directors Resolution of IIG of [____] and the Shareholders Resolution are in full force and effect, correctly reflect the resolutions stated in it and the factual statements made in it are complete and correct and correctly reflect the resolutions reflected therein and have not been revoked, rescinded or otherwise altered by any subsequent corporate action or event;

6.  the persons having signed the Settlement Agreement on behalf of Addressees have thereby validly entered the Settlement Agreement on behalf of Addressees;

7.  the Settlement Agreement constitutes, under the law applicable to the Settlement Agreement as per its choice of law provision, legal, valid and binding obligations of IIG, enforceable against IIG in accordance with its terms.

Based upon and subject to the foregoing and subject to the qualifications set forth herein and to any matters, documents, information or events not disclosed to us, we express the following opinions:

---

[1] http://insolventies.rechtspraak.nl/

[2] Published via this URL: http://www.rechtspraak.nl/Registers/Centraalinsolventieregister/EU-registraties.htm as PDF http://www.rechtspraak.nl/NR/rdonlyres/5F55B525-3CD2-43E3-8BF5-B376A89D03D1/0/Euregistratie.pdf

## IV.    Opinions

### 1.    Corporate Status

IIG has been duly incorporated, is properly registered and validly existing as a private company with limited liability (*beslotenvennootschap)* under Dutch law.

### 2.    Corporate power

IIG has the corporate power to enter into the Settlement Agreement as well as to perform its obligations thereunder.

### 3.    Corporate Action

IIG has taken all corporate actions required by its articles of association and/or Dutch law in connection with entering into the Settlement Agreement and the performance of its obligations thereunder.

### 4.    Due Execution

Signature of the Settlement Agreement on behalf of IIG by Messrs. [_____] on behalf of IIG, comprises IIG validly entering into the Settlement Agreement.

### 5.    Enforceability / conflict with laws

The Settlement Agreement as signed by IIG constitutes valid and binding obligations of IIG, enforceable against IIG in accordance with its terms and not conflict with any provision of the governing documents of IIG reviewed by us or mandatory Dutch law applicable to IIG and no government approvals, authorizations, licenses, consents or registrations (other than those which have been obtained) are necessary to enable IIG to enter into and perform the Settlements contemplated by the Settlement Agreement.

Restrictions

**1.**    The opinions expressed above are subject to the following qualifications:

**I.-**    We as Dutch Lawyers are not qualified or able to assess the terms of the Settlement Agreement under the applicable law and the obligations of the parties to the Settlement Agreement.

**II.-**    The information contained in the registration of IIG in the trade register of the Chamber of Commerce  does not constitute conclusive evidence of the facts reflected in it, the

same applies for the registration in the trade register of the Chamber of Commerce   of the entities forming the Board of Directors.

**III.-**  Pursuant to Article 2:7 of the Dutch Civil Code, any Settlement entered into by a legal entity may be nullified by the legal entity itself (or by its receiver in liquidation or insolvency proceedings (curator)) if the objects of such entity were transgressed by the Settlement and the other party to the Settlement knew or should have known this (*wist of had moetenweten*) without independent investigation. The Dutch Supreme Court has ruled that in determining whether the objects of a legal entity are transgressed, not only the description of such objects in the articles of association is decisive, but all (relevant) circumstances must be taken into account, in particular whether the interests of the legal entity were served by the Settlement. The articles of association of IIG allow for it to enter into an agreement such as the Settlement Agreement. However, we cannot assess whether there are other relevant circumstances that must be taken into account, in particular whether the interests of IIG are served by executing the Settlement Agreement, since this is a matter of fact on which we cannot render any legal opinion.

**IV.-**  The enforceability of the obligations of IIG under the Settlement Agreement against IIG in the Netherlands may be limited or affected by:

**a.**  any applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws or procedures now or hereinafter in effect, relating to or affecting the enforcement or protection of creditor rights generally; and

**b.**  the provisions of fraudulent preference and fraudulent conveyance (*ActioPauliana*) and similar rights available to receivers in bankruptcy or creditors in other jurisdictions;

**c.**  claims based on tort (*onrechtmatigedaad*); and

**d.**  sanctions implemented or effective in the Netherlands under (among others) the Economic Offences Act (*Wet EconomischeDelicten*) or European Community laws and regulations.

Yours faithfully,

Blenheim


**List of Documents**

-  copy of the deed of incorporation of IIG (Annex 1)

-  copy of the articles of association (*statuten*) of IIG (Annex 2);

-  the registration of IIG in the trade register of the Chamber of Commerce (Annex 3) as per the date hereof;

-  copy of the shareholders register of IIG (Annex 4).

- copy of the Board Resolution of IIG  [_____] (Annex 5);

- copy of the Shareholders Resolution [_____] (Annex 6);

- the registration of the legal entities comprising the Board of Directors of IIG in the trade register of the Chamber of Commerce (Annex 7) as per the date hereof;

- copy of the Settlement Agreement signed by all parties thereto (Annex 8).

- Annex 9: General terms and conditions of Blenheim.

## ANNEX XI- A

## LETTER OF CONFORMITY OF IIG GLOBAL TRADE FINANCE FUND LTD., IIG TRADE OPPORTUNITIES FUND N. V., AND TRADE FINANCE FUNDING I B. V.

### IIG TRADE OPPORTUNITIES FUND N.V.

### CERTIFICATE

In the city of Willemstad, Curazao, on the XXth day of March 2019, IIG Trade Opportunities Fund N. V., a company incorporated and existing in accordance with the laws of Curazao, represented in this act by Mr. XXXX, in the capacity of **XXXX,** domiciled in xxx, Willemstad, Curazao, hereby declares and guarantees that:

**I.-**      It is aware of the Settlement Agreement concluded between IIG TOF B. V. ("**IIG TOF**"), Trade Finance Trust ("**TFT**"), NacadieComercial S.A. ("**Nacadie**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. ("**FRIAR**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. Uruguay Branch ("**FRIAR Uruguay**"), Algodonera Avellaneda S.A. ("**Algodonera**"), SWAAS International Corporation ("**SWASS**"), Vicentin SAIC ("**Vicentin**") and Vicentin SAIC Uruguay Branch ("**Vicentin ROU**"), to which a copy of this letter was attached as Annex XI-A(hereinafter the "AGREEMENT").

**II.-**      **IIG Trade Opportunities Fund N. V.,** expressly acknowledges its agreement with the terms of the AGREEMENT, accepts them, and declares that, irrevocably and without restrictions, they assume the same commitments, obligations and guarantees, and make the same waivers, as those assumed and carried out by IIG TOF in the AGREEMENT.

**III.-**      In addition, **IIG Trade Opportunities Fund N. V.**  guarantees that it has no further claims against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin and/or Vicentin ROU, under the Contracts of Lines of Credit that bound it with IIG TOF and/or any other contract entered into by those companies with IIG Capital LLC and/or IIG TOF. In addition, it states that it has no further claims to make against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin

ROU and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives, for any other reason, committing to desist from any claim that it may make, as well as from bringing any claim against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

**IV.-**    Finally, **IIG Trade Opportunities Fund N. V.** expressly recognizes that it does not possess any outstanding credit and/or executive titles from Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

As proof of conformity, in the indicated place and date, this certificate is signed.

# TRADE FINANCE FUNDING I B.V.

## CERTIFICATE

In the city of Amsterdam, on the XXth day of March 2019, **Trade Finance Funding I.B.V.**, a company incorporated and existing in accordance with the laws of the Kingdom of the Netherlands, represented in this act by Mr. XXXX, in the capacity of XXXX, domiciled in xxx, Amsterdam, Netherlands, hereby declares and guarantees that:

**I.-**      It is aware of the Settlement Agreement concluded between IIG TOF B. V. ("**IIG TOF**"), Trade Finance Trust ("**TFT**"), NacadieComercial S.A. ("**Nacadie**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. ("**FRIAR**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. Uruguay Branch ("**FRIAR Uruguay**"), Algodonera Avellaneda S.A. ("**Algodonera**"), SWAAS International Corporation ("**SWASS**"), Vicentin SAIC ("**Vicentin**") and Vicentin SAIC Uruguay Branch ("**Vicentin ROU**") to which a copy of this letter was attached as Annex XI-A (hereinafter the "AGREEMENT").

**II.-**      **Trade Finance Funding I B.V.**, expressly acknowledges its agreement with the terms of the AGREEMENT, accepts them, and declares that, irrevocably and without restrictions, they assume the same commitments, obligations and guarantees, and make the same waivers, as those assumed and carried out by IIG TOF in the AGREEMENT.

**III.-**      In addition, **Trade Finance Funding I B.V.** guarantees that it has no further claims against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin and/or Vicentin ROU, under the Contracts of Lines of Credit that bound it with IIG TOF and/or any other contract entered into by those companies with IIG Capital LLC and/or IIG TOF. In addition, it states that it has no further claims to make against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives, for any other reason, committing to desist from any claim that it may make, as well as from bringing any claim against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or

their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

**IV.-**    Finally, **Trade Finance Funding I B.V.** expressly recognizes that it does not possess any outstanding credit and/or executive titles from Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

As proof of conformity, in the indicated place and date, this certificate is signed.

### IIG GLOBAL TRADE FINANCE FUND LTD

### CERTIFICATE

In the city of George Town, Cayman Islands, on the XXth day of March 2019, **IIG Global Trade Finance Fund Ltd**, a company incorporated and existing in accordance with the laws of the Cayman Islands, represented in this act by Mr. XXXX, in the capacity of XXXX, domiciled in xxx, Cayman Islands, hereby declares and guarantees that:

**I.-** It is aware of the Settlement Agreement concluded between IIG TOF B. V. ("**IIG TOF**"), Trade Finance Trust ("**TFT**"), NacadieComercial S.A. ("**Nacadie**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. ("**FRIAR**"), Frigorífico Regional IndustriasAlimenticias Reconquista (F.R.I.A.R.) S.A. Uruguay Branch ("**FRIAR Uruguay**"), Algodonera Avellaneda S.A. ("**Algodonera**"), SWAAS International Corporation ("**SWASS**"), Vicentin SAIC ("**Vicentin**") and Vicentin SAIC Uruguay Branch ("**Vicentin ROU**") to which a copy of this letter was attached as Annex XI-A (hereinafter the "AGREEMENT").

**II.-** **IIG Global Trade Finance Fund Ltd**, expressly acknowledges its agreement with the terms of the AGREEMENT, accepts them, and declares that, irrevocably and without restrictions, they assume the same commitments, obligations and guarantees, and make the same waivers, as those assumed and carried out by IIG TOF in the AGREEMENT.

**III.-** In addition, **IIG Global Trade Finance Fund Ltd** guarantees that it has no further claims against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin and/or Vicentin ROU, under the Contracts of Lines of Credit that bound it with IIG TOF and/or any other contract entered into by those companies with IIG Capital LLC and/or IIG TOF. In addition, it states that it has no further claims to make against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives, for any other reason, committing to

desist from any claim that it may make, as well as from bringing any claim against Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

**IV.-**    Finally, **IIG Global Trade Finance Fund Ltd**, expressly recognizes that it does not possess any outstanding credit and/or executive titles from Nacadie, FRIAR, FRIAR ROU, Algodonera, Vicentin, Vicentin ROU, and/or their related companies and/or any of their representatives and/or directors and/or officials and/or advisers and/or attorneys and/or agents and/or commercial representatives.

As proof of conformity, in the indicated place and date, this certificate is signed.

## ANNEX XI - B

## CLEARANCE CERTIFICATE

**Algodonera Avellaneda S.A.**
**Vicentín S.A.I.C.**
**Vicentin S.A.I.C. Sucursal Uruguay**
By hand,


**Ref.: Cancelation of Algodonera Credit Line**

Dear Sirs,

We are writing to you in order to let you know that the Credit Line Agreement executed by you with IIG TOF B.V., under which Algodonera was granted a credit line for an amount up to thirty million dollars of the United States of America (USD 30,000,000.00) (the "Algodonera Credit Line") has been canceled.

Consequently, any and all pecuniary obligations linked to the Algodonera Credit Line, including without limitation, any rights, credits and shares related to the collection of sums of money for any concept by virtue of, and/or in relation to, and/or linked to the Algodonera Credit Line are currently canceled, IIG TOF B.V. nor any third-party being entitled to claim for them.


Without further ado and sincerely yours,


_____

By: **IIG TOF B.V.** (represented by Trust International Management (T.I.M.) B.V.)

Name:

Title:

_____

By: **Trade Finance Trust** (represented by IIG Trade Finance LLC as Administrator)

Name:

Title:

**CLEARANCE CERTIFICATE**

**Frigorífico Regional Industrias Alimenticias Reconquista S.A.,**
**Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay,**
By hand,

**Ref.: Assignment Agreement - FRIAR Credit Line**

Dear Sirs,

We are writing to you in order to let you know that the Credit Line Agreement executed by you with IIG Capital LLC (later assigned to IIG TOF B.V.) under which FRIAR was granted a credit line for an amount up to thirty million dollars of the United States of America (USD 35,000,000.00) (the "FRIAR Credit Line") has been canceled.

Consequently, any and all pecuniary obligations linked to the FRIAR Credit Line, including without limitation, any rights, credits and shares related to the collection of sums of money for any concept by virtue of, and/or in relation to, and/or linked to the FRIAR Credit Line are currently canceled, IIG TOF B.V. nor any third-party being entitled to claim for them.

Without further ado and sincerely,

_____

By: **IIG TOF B.V.** (represented by Trust International Management (T.I.M.)

Name:

Title:

_____

By: **Trade Finance Trust** (represented by IIG Trade Finance LLC as Administrator)

Name:

Title:

## ANNEX XII

## <u>LIST OF PROMISSORY NOTES</u>

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Promissory note issued by NacadieComercial S.A. to IIG TOF B. V. | April 16, 2014 | US$ 22,044,055.26 |
| Promissory note issued byFrigorífico Regional Industrias Alimenticias Reconquista (F.R.I.A.R.) S.A., sucursal Uruguay to IIG TOF B.V. | April 16, 2014 | US$ 2,253,654.04 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | January 28, 2014 | US$ 2,759,623.54 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 5, 2014 | US$ 2,759,548.67 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 5, 2014 | US$ 2,759,548.67 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 5, 2014 | US$ 2,759,548.67 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | March 18, 2015 | US$ 1,765,176.50 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | April 16, 2015 | US$ 1,530,407.16 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | April 29, 2015 | US$ 2,207,062.49 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | June 3, 2015 | US$ 2,759,567.38 |

| | | |
|---|---|---|
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | July 1, 2015 | US$ 2,758,008.13 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 4, 2016 | US$ 2,207,077.10 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 10, 2016 | US$ 2,758,846.37 |
| Promissory note issued by Algodonera Avellaneda S.A. to IIG TOF B. V. | May 10, 2016 | US$ 2,758,846.37 |

# <u>ANNEX B</u>

February, 2019

**IIG TOF B.V.**
**Trade Finance Trust**
By hand,

<u>**Ref.: Settlement Agreement Proposal - Offer No. 10010/2019**</u>

Dear Sirs,

We are writing to you, in our capacity as representatives of Nacadie Comercial S.A., Frigorífico Regional Industrias Alimenticias Reconquista S.A., Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay, Algodonera Avellaneda S.A., Vicentin S.A.I.C., Vicentin S.A.I.C. Sucursal Uruguay, and SWAAS International Corporation S.A., in order to accept the Reference Offer.

Without further ado and sincerely yours,

_____
By: **Nacadie Comercial S.A.**
Name:
Title:

_____
By: **Frigorífico Regional Industrias Alimenticias Reconquista S.A.**
Name:
Title:

_____

By: **Frigorífico Regional Industrias Alimenticias Reconquista S.A. Sucursal Uruguay**

Name:

Title:

_____

By: **Avellaneda S.A.**

Name:

Title:

_____

By: **Vicentin S.A.I.C.**

Name:

Title:

_____

By: **Vicentin S.A.I.C. Sucursal Uruguay**

Name:

Title:

_____

By: **SWAAS International Corporation**

Name:

Title:

[ALL SIGNATURES AND TITLES CERTIFIED BY A NOTARY PUBLIC]

**ANNEX C**

*New York law governed assignment agreement re transfer of IIG TOF's rights, title and interest as lender of record for the Saldana Loan, SanCor Loan and CAGSA Loan to STFF and GTFF*

**Execution Version**

## ASSIGNMENT AGREEMENT

This Assignment Agreement (this "Agreement") is entered into as of July __, 2023, by and among Mr J.E.P.A. van Hooff, in his capacity as bankruptcy trustee in the bankruptcy of IIG TOF B.V. (the "Assignor"), on the one hand, and IIG Global Trade Finance Fund Ltd. ("GTFF") and IIG Structured Trade Finance Fund Ltd. ("STFF" and together with GTFF, the "Assignees" and each an "Assignee"), on the other.  Assignor, GTFF, and STFF are each a "Party" to this Agreement and collectively are referred to herein as the "Parties".

WHEREAS, reference is made to the settlement agreement regarding collection of loans (as set forth in Schedule 1) (collectively, the "Loans") dated July [●], 2023 (the "Settlement Agreement");

WHEREAS, Assignor wishes to assign any and all of its residual rights in the Loans to GTFF and/or STFF to permit GTFF and/or STFF to, *inter alia*, collect amounts due under the Loans and, to the extent applicable, enforce their rights under such agreements in accordance with the Settlement Agreement;

WHEREAS, IIG TOF B.V. ("IIG TOF") was declared bankrupt on 21 January 2020 by the District Court in Amsterdam and Mr J.E.P.A. van Hooff was appointed as Bankruptcy Trustee of IIG TOF (the "Bankruptcy Trustee"); and

WHEREAS, as a result of IIG TOF's bankruptcy, the Bankruptcy Trustee is exclusively authorized to administer, sell, transfer and/or dispose of assets in the bankrupt estate of IIG TOF.

NOW, THEREFORE, in consideration of the premises, covenants and agreements set forth herein and in the Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**Section 1.    Assignment**.  Subject to the terms and conditions set forth herein, including without limitation the final sentence of this paragraph, Assignor hereby irrevocably sells, assigns, grants, conveys and transfers (a) with respect to the CAGSA and Saldana Loans, to Assignees, and the Assignees hereby irrevocably purchase and acquire from Assignor, and (b) with respect to the SanCor Loan, to STFF, and STFF hereby irrevocably purchases and acquires from Assignor, as of the Effective Date (as defined below) (i) all of IIG TOF's right, title, and interest in, to and under the respective loan agreements for the applicable borrowers, any amendments thereto, and all other related financing documents, including all collateral and security documents and any related pledge agreements (collectively, the "Transferred Loans") and (ii) all legal and equitable rights and claims related to the foregoing (collectively, the "Transferred Rights").  Notwithstanding the foregoing, the Parties acknowledge and agree that the Assignees are acquiring the Transferred Rights, subject to the third-party beneficial interests of TriLinc Global Impact Fund – Trade Finance Ltd., IIG Bank (Malta) Ltd., Girobank N.V. and Girobank International N.V. and Venezuela Recovery Fund N.V. (collectively, the "Third Parties") and IIG TOF, as applicable, as set forth in the Settlement Agreement.  Except as set forth herein and in the Settlement Agreement, Assignees are not assuming any liabilities for any claims any party may have against Assignor in connection with the Loans.

**Section 2.    Further Assurances**.  Each Party agrees, upon reasonable notice, to provide such further notifications and execute such other documents as may be reasonably requested for the purpose of giving effect to or evidencing the transactions contemplated by this Agreement including, but not limited to, documents necessary to transfer, foreclose or otherwise realize collateral, mortgages or other instruments of value for the benefit of Assignees.  Any expenses in relation to the provision of such documents will be borne by the Assignees.

**Section 3.    Approvals**.  This Agreement shall only become effective upon approval of the Settlement Agreement by the United States Bankruptcy Court for the Southern District of New York and the Dutch Supervisory Judge in the bankruptcy of IIG TOF and entry of an order by such courts, as applicable, that is not subject to a stay and no longer subject to appeal (the "Effective Date").

**Section 4.    Governing Law; Jurisdiction**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any jurisdictions other than the State of New York.  All disputes between the Parties arising out of or in connection with this Agreement will be resolved by the Amsterdam District Court following proceedings in English before the Chamber for International Commercial Matters ("NCC") to the exclusion of the jurisdiction of any other courts. An action for interim measures, including protective measures, available under Dutch law may be brought before the NCC in Summary Proceedings ("CSP") conducted in the English language. Any appeals against NCC or CSP judgments will be submitted to the Amsterdam Court of Appeal's Chamber for International Commercial Matters. The NCC Rules of Procedure apply.

**Section 5.    Successors and Assigns.**    This Agreement, including the representations, warranties and covenants contained herein, shall inure to the benefit of, be binding upon and be enforceable by and against the Parties and their respective successors and permitted assigns; provided, however, that this Agreement, and any rights or obligations hereunder, may not be assigned, or otherwise transferred by either Party without the prior written consent of the other Party (such consent not to be unreasonably withheld or delayed).

**Section 6.    Miscellaneous.**    Each individual signing this Agreement on behalf of a Party hereto hereby represents and warrants that he or she is, on the date he or she signs this Agreement, duly authorized by all necessary and appropriate action to sign this Agreement on behalf of such Party and does so with full legal authority. Except as expressly set forth herein, the Assignor has not made, does not make, and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guarantees of any kind or character whatsoever, whether express or implied as to, concerning or with respect to the Transferred Rights or the Transferred Loans.   Except as expressly set forth herein, the Transferred Rights and Transferred Loans are being sold, transferred, assigned and conveyed to the Assignees on an "as is, where is" basis.

If any provisions of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any

jurisdiction.   Subject to <u>Section 2</u> above, each Party will be responsible for its own costs and expenses in connection with the transactions contemplated by this Agreement.   This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute a singular agreement. Delivery of an executed counterpart of a signature page to this Agreement by electronic transmission shall be as effective as delivery of an original executed counterpart of this Agreement.   This Agreement may be amended or modified only by a written instrument signed by each Party.   For the avoidance of doubt, to the extent there is a difference between this Agreement and the Settlement Agreement, the Settlement Agreement controls and supersedes this Agreement. All notices, requests, demands and other communications to either Party given under this Agreement shall be in writing, hand delivered or sent by overnight courier, electronic transmission or telecopier (with confirmation received) to such Party at the address, electronic mail address or telecopy number specified for such Party on <u>Schedule 2</u> hereto, or at such other address, electronic mail address or telecopy number as such Party may subsequently request in writing.   All notices, requests, demands and other communications will be deemed delivered when actually received.

[Remainder of page left blank intentionally]

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be signed by its authorized signatory as of the date first written above.

**Mr J.E.P.A. van Hooff, in his capacity as bankruptcy trustee in the bankruptcy of IIG TOF B.V., as Assignor**

By: _____
      Mr J.E.P.A. van Hooff

**IIG GLOBAL TRADE FINANCE FUND LTD. (In Official Liquidation), as an Assignee**

By: _____
      Christopher Kennedy, solely in his capacity as a joint official liquidator of IIG Global Trade Finance Fund Ltd. (In Official Liquidation), and not in his personal capacity

**IIG STRUCTURED TRADE FINANCE FUND LTD. (In Official Liquidation), as an Assignee**

By: _____
      Christopher Kennedy, solely in his capacity as a joint official liquidator of IIG Structured Trade Finance Fund Ltd. (In Official Liquidation), and not in his personal capacity

[Signature Page to Assignment Agreement]

### SCHEDULE 1

| | |
|---|---|
| CAGSA Loan | IIG TOF purportedly provided a loan to Compañía Argentina de Granos S.A. ("**CAGSA**") as borrower and Molino Cañuelas S.A.C.I.F.I.A. ("**MOLCA**") pursuant to (i) a $18,5 million credit line agreement dated 18 July 2014 and (ii) a $15 million credit facility agreement dated 25 July 2014, both agreements as amended from time to time. |
| Saldana Loan | IIG TOF purportedly provided a loan to Saldana S.A. ("**Saldana**") pursuant to a credit facility agreement of 19 June 2014 amounting to $351,559 as per 31 December 2017 according to IIG TOF's 2017 annual accounts, and the actual outstanding loan amount may differ from IIG TOF's records. |
| SanCor Loan | IIG TOF purportedly provided a loan to Sancor Cooperativas Unidas Ltda. ("**Sancor**") as borrower and Sancor do Brasil Productos Alimenticios Ltda. ("**Sancor Brazil**") as surety pursuant to a $50 million credit facility agreement dated 21 December 2009, as amended from time to time. |

## <u>SCHEDULE 2</u>

<u>IIG TOF B.V. and the Bankruptcy Trustee's Address for Notices and Delivery</u>:

*Attn*: J.E.P.A. van Hooff in his capacity of bankruptcy trustee of IIG TOF B.V.
Beethovenplein 10 (1077 WM)
Amsterdam, The Netherlands
*Email*: job.vanhooff@stibbe.com, iigtof@stibbe.com


<u>GTFF's and STFF's Address for Notices and Delivery</u>:

Joint Official Liquidators of IIG Global Trade Finance Fund Ltd.
c/o Alvarez and Marsal Cayman Islands Ltd.
Attn: Christopher Kennedy and Alex Lawson
2nd Floor Flagship Building, 70 Harbour Drive
P.O. Box 2507
Grand Cayman KY1-1104 Cayman Islands
Email: chris.kennedy@alvarezandmarsal.com

copy to:

Pillsbury Winthrop Shaw Pittman LLP
Attn: John Pintarelli
31 West 52nd Street
New York, New York 10019
Email: john.pintarelli@pillsburylaw.com